SUPERIOR COURT
FOR THE DISTRICT OF COLUMBIA

**ROLLIN AMORE**
5431 32nd Street, NW
Washington, DC
As Co-Administrator of the Estates of
Susanne Amore and Salvatore Michael Amore,
Deceased

      **Plaintiffs**

     v.

**ACCOR SA**, a Republic of France Corporation,
c/o Mayor Anthony A. Williams,
Office of the Secretary
John A. Wilson Building
1350 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

**ACCOR NORTH AMERICA, INC**, a Delaware
Corporation, c/o Prentice-Hall Corporation System,
Inc.,
1090 Vermont Ave., N.W.,
Washington, DC 20005

**SOFITEL GROUP, LLC**, a District of Columbia
Company, c/o CBCInnovis, Inc.,
1023 15th Street, N.W. Suite 401
Washington, DC 20005

**DOES 1-5**,

    **Defendants.**

Civil Action No. 05-0008773 (PAB)

**FIRST AMENDED
COMPLAINT**

**DEMAND FOR JURY TRIAL**


RECEIVED
Civil Clerk's Office
JAN 0 6 2006
Superior Court of the
District of Columbia
Washington, D.C.

---

### FIRST AMENDED COMPLAINT

  Plaintiff, ROLLIN AMORE, a continuous citizen of the District of Columbia for over

twenty years, brings this lawsuit *Pendente Lite* as the Co-Administrator, of the Estates of

     - 1 -.

01/09/2006 MON 13:46  [TX/RX NO 9014]  @005

Susanne Amore and Salvatore Michael Amore, for the purpose of bringing this survival negligence action, and by his attorneys Read K. McCaffrey, Christopher W. Hellmich and Patton Boggs LLP; respectfully allege:

## PRELIMINARY STATEMENT

1.   Plaintiff's mother and brother died a horrific death in a train fire outside Nancy, France at 1:20 a.m. on November 6, 2002. Also on board the train was Plaintiff's brother's wife and their two young children ages twelve and eight. The five members of the Amore family were traveling in a "sleeper car" when a fire started in the railcar's kitchenette. The cause of the fire is not germane to Plaintiff's claims. This lawsuit does not seek wrongful death damages that could be brought by the decedent's heirs. Rather, this survival action seeks to recover the damages suffered by the decedents prior to their deaths, which were directly and proximately caused by the ineffective training that the railcar attendants received from the defendants who were responsible for providing general safety and fire safety training to the rail car attendants.

2.   This lawsuit cannot be brought in any other jurisdiction in the United States because the statute of limitations has expired. Nor can this lawsuit be brought in France because France does not recognize survival actions by estates. French civil procedure only recognizes wrongful death damages that are brought by surviving heirs; France does not recognize any such actions by an injured estate.

## PARTIES

### PLAINTIFF

3.   Plaintiff ROLLIN AMORE has continuously resided in the District of Columbia for more than twenty years.

FIRST AMENDED COMPLAINT

4.    Plaintiff brings this lawsuit *Pendente Lite* in his capacity as the Co- Administrator of the ESTATE of SUSANNE BRUCKNER AMORE, ("OMA") deceased, who was citizen and resident of the State of Connecticut.  Plaintiff was appointed to be the Co-Administrator of this estate by the Honorable Frank J. Forgione, Judge, State of Conneticut, Court of Probate, District of North Branford, and Plaintiff has moved the Superior Court for the District of Columbia to enter an order acknowledging this appointment and Plaintiffs right to exercise all the powers of the office of foreign personal representative, including the authority to sue in the District of Columbia, subject to D.C. Code §20-512.  OMA was the Plaintiff's mother and had a financial interest in District of Columbia real property.

5.    Plaintiff also brings this lawsuit *Pendente Lite* in his capacity as the Co- Administrator of the ESTATE of SALVATORE MICHAEL AMORE, ("SALVATORE AMORE"), deceased, who was a citizen and resident of the State of Connecticut.  Plaintiff was appointed to be the Co-Administrator of this estate by the Honorable Frank J. Forgione, Judge, State of Conneticut, Court of Probate, District of North Branford, and Plaintiff has moved the Superior Court for the District of Columbia to enter an order acknowledging this appointment and Plaintiffs right to exercise all the powers of the office of foreign personal representative, including the authority to sue in the District of Columbia, subject to D.C. Code §20-512.  SALVATORE AMORE was the Plaintiff's brother and had a financial interest in District of Columbia real property.

## DEFENDANTS

Defendant, ACCOR SA ("ACCOR"), is a corporation duly organized and formed under the laws of the Republic of France.  ACCOR holds itself out as a global hotel and

- 3 -

hospitality company, that directly and/or through its wholly owned subsidiaries, divisions, alter egos, or mere departments owns and/or operates: The Sofitel Lafayette Square- Washington, D.C., seven Red Roof Inns, and four Motel 6 all located in the District of Columbia. Through these twelve hotel properties, and/or its agents, alter egos, divisions, or mere departments, ACCOR derives a significant amount of revenue from its continuous and systematic business activity in the District of Columbia and from residents of the District of Columbia.

a. Upon information and belief, ACCOR does not maintain an agent for service of process in the District of Columbia, but in accordance with D.C. Code §29-101.108 it will be served through the Office of the Mayor, as well as service on its agents and/or mere departments the co-defendants.

b. Upon information and belief, ACCOR owns all of the outstanding stock of certain of its subsidiaries that played a role in the commission of the wrongful acts that are the subject of this action.

c. Upon further information and belief, ACCOR exercises active control over the finances, personnel decisions, and operations and marketing decisions of these said wholly owned entities, including the decision making that led to the commission of the wrongful acts which are the subject of this action.

d. Upon further information and belief, ACCOR and the said wholly owned entities have extensively interrelated operations, centralized control of labor relations, finances, and common management.

e. Upon further information and belief, ACCOR's wholly owned entities use ACCOR's trademarks, and all said corporations present a common marketing image and

- 4 -

FIRST AMENDED COMPLAINT

hold themselves out to the public as a single entity that is conveniently departmentalized worldwide.

    f. Upon information and belief, ACCOR's annual reports represent that the revenues and expenses generated by its said wholly owned entities are revenues and expenses that are attributed to ACCOR.

6.    Defendant, ACCOR North America, Inc ("ACCOR N.A.") is a Delaware corporation who is licensed to transact business in the District of Columbia under license number 862931. ACCOR N.A. maintains an agent for service of process in the District of Columbia, Prentice-Hall Corporation System, Inc., 1090 Vermont Ave., N.W., Washington, DC 20005. ACCOR ultimately owns 100 percent of ACCOR N.A. ACCOR N.A is a mere department, the alter ego, and/or agent of ACCOR, which is confirmed, in part, by ACCOR N.A.'s regular press releases repeatedly holding out ACCOR N.A. as simply a division of ACCOR. ACCOR N.A. conducts a substantial amount of business in the District of Columbia for itself and on behalf of ACCOR primarily through the ACCOR hotels operating in the District of Columbia.

7.    Defendant, SOFITEL GROUP, LLC, is a District of Columbia company with its principal place of business in the District of Columbia. SOFITEL GROUP, LLC maintains an agent for service of process in the District of Columbia, CBCInnovis, Inc., 1023 15th Street, N.W. Suite 401, Washington, DC 20005. ACCOR owns the Sofitel brand and trademark used by the SOFITEL GROUP, LLC. Upon information and belief, ACCOR ultimately owns 100 percent of the SOFITEL GROUP, LLC. SOFITEL GROUP, LLC is a mere department, alter ego, or agent of ACCOR. As stated in its press release announcing the July 2002 opening of the Sofitel Lafayette Square, Washington,

FIRST AMENDED COMPLAINT

D.C., "Sofitel is the prestige brand of Accor hotels…" It goes on to hold out ACCOR as the only owner of the Washington, D.C. Sofitel. SOFITEL GROUP, LLC conducts a substantial amount of business in the District of Columbia on behalf of ACCOR primarily through the ACCOR hotels operating in the District of Columbia.

8.    Defendant, DOES 1-5 are businesses or persons located in the District of Columbia who are currently unknown but who conduct regular and systematic business on behalf of ACCOR and/or generate a significant amount of revenue on behalf of ACCOR in the District of Columbia or from residents of the District of Columbia. Plaintiff reserves the right to further identify these parties as they become known in discovery.

9.    ACCOR's Annual Report reveals that members of ACCOR's management board overlap with those of ACCOR N.A. The Annual Report also describes how ACCOR does business in the District of Columbia directly and through its alter ego, mere department, or agents, ACCOR N.A. and/or SOFITEL GROUP, LLC. Among some of the factors disclosed in the ACCOR Annual Report demonstrating ACCOR's direct, continuous and systematic contacts with the District of Columbia and/or its citizens, are:

   a.    ACCOR owns 100% of ACCOR N.A.

   b.    ACCOR is the ultimate owner of SOFITEL GROUP, LLC.

   c.    ACCOR owns the Sofitel brand and owns the business rights corresponding to the hotel properties and holds hotel management and franchise contracts.

   d.    ACCOR states that it "provides" to its subsidiaries including Defendants SOFITEL GROUP and ACCOR NA, "information systems, purchasing, cash

FIRST AMENDED COMPLAINT

management and guarantee, advertising, marketing and advisory services, as well as the lending of staff."

     e.    ACCOR directed and/or approved ACCOR NA to sell ACCOR's interest in the Sofitel Lafayette Square, while retaining the ACCOR brand name of Sofitel, which ACCOR owns, and an operating interest in the property.

     f.    ACCOR derives significant revenue from its District of Columbia hotels; namely, all Red Roof Inns, Motel 6, and the Sofitel Lafayette Square.

     g.    ACCOR directly solicits District of Columbia residents to stay at ACCOR hotels including those in the District of Columbia.

     h.    ACCOR directly contracts with District of Columbia residents through ACCOR's on-line reservation system.

     i.    ACCOR directly solicits District of Columbia residents to participate in advertising links to the ACCOR website on computers owned or operated by residents of the District of Columbia.

     j.    ACCOR has interlocking boards of directors with its alter ego, mere department, or agents doing business in the District of Columbia.

     k.    ACCOR provides uniform marketing and advertising of all ACCOR brands in the District of Columbia. All such advertisements carry the ACCOR logo and all advertising is subject to the review and or approval of ACCOR.

     l.    ACCOR contracted with the entity that designed the Sofitel Lafayette Square.

     m.    ACCOR enters contracts for the benefit of its hotels in the District of Columbia, for example, upon information and belief, ACCOR executed a contract with

01/09/2006 MON 13:46  [TX/RX NO 9014]  ☒011

LG Electronics to install LCD televisions in hotel rooms located in the District of Columbia.

    n.    ACCOR claims all employees of District of Columbia Red Roof Inns, Motel 6, and the Sofitel Lafayette Square are employees of ACCOR.

    o.    ACCOR sets minimum employee training requirements for hundreds of District of Columbia employees.

    p.    ACCOR provides each employee working in an ACCOR branded hotel, including those ACCOR employees working in the District of Columbia, with benefits available only to ACCOR employees, such as discount travel and hotel stays at other ACCOR properties.

    q.    ACCOR has a profit sharing program in which, upon information and belief, one or more District of Columbia employee(s) has enjoyed profits distributed from ACCOR.

    r.    ACCOR sets minimum environmental policies for its twelve hotels in the District of Columbia.

    s.    ACCOR provides for all Risk Assessments for all hotels, including those in the District of Columbia.

    t.    ACCOR maintains a closed-loop internal reservations system, 'Accortel', in which employees of all twelve ACCOR hotels in the District have the ability to exclusively book reservations for guests at any other ACCOR property in the world.

    u.    ACCOR requires its District of Columbia hotels to maintain a computerized management system, 'Tars On Line', to track occupancy and automatically adjusts the billable room rates for its District of Columbia hotel rooms.

- 8 - .

FIRST AMENDED COMPLAINT

## JURISDICTION AND VENUE

11. Jurisdiction is proper pursuant to DC Code §§13-334 and/or 13-422 in that Plaintiff ROLLIN AMORE has continuously resided in the District of Columbia for over twenty years and one or more Defendants are either District of Columbia corporations or persons or they are affiliated with District of Columbia corporations who are agent, mere departments, or alter egos of the ultimate parent-defendant corporations, or derive substantial revenue from direct, systemic and continuous commerce intentionally sought in the District of Columbia or from District of Columbia citizens and residents. The amount in controversy, exclusive of interest and costs, exceeds the sum of $50,000.00.

12. Venue is proper in the District of Columbia because Plaintiff ROLLIN AMORE has continuously resided in the District of Columbia for more than twenty years and the estates and he has been appointed the Co-Administrator these estates. Additionally, each said estate had contacts with the District of Columbia and even owned assets and/or interests in real estate in the District of Columbia.

13. The Defendants have entered the District in furtherance of their continuous business and derive substantial revenue therefrom or are affiliates of District of Columbia companies which are mere departments or alter egos of ACCOR or are in an agency relationship with ACCOR, and are, therefore, subject to the personal jurisdiction of this Court.

14. Finally, survival actions by the estates for pre-death conscious pain and suffering, lost economic income, and punitive damages, are barred as a matter of law in France or any other possible forum in the United States.

## FACTS COMMON TO ALL COUNTS

15. On November 6, 2002, Susanne Amore, Salvatore Michael Amore, Jeanne Meyers Amore, Emily Jeanne Amore, and Michael B. Amore (hereafter "the Amore family") were enjoying the last phase of their first European family vacation while traveling on an overnight train from Paris to Munich. The Amore family was assigned to two separate sleeping cachets that were located next to one another in the same railcar. Slightly more than an hour out of Paris, at 01:45, an electrical panel in the kitchenette of the railcar in which the Amore family was traveling caught fire and began to fill the railcar with smoke and fire.

16. The train was staffed by attendants who were trained by Defendant ACCOR. ACCOR directly owns and operates the "Accor Academy". Upon information and belief, the Accor Academy also produces training materials for the train attendants to review and refresh their training. One or more attendants on board the train carrying the Amore family was trained at the Accor Academy or received, reviewed, or relied upon Accor Academy training materials prior to the departure of the train on which the Amore family traveled.

17. ACCOR maintains a worldwide Risk Prevention Committee ("RPC") that is comprised of ACCOR's most senior executives. The RPC's role is to ensure the sufficiency of the Accor Academy training and that, in turn, all ACCOR employees – or those non-Accor employees who attend the Accor Academy or receive its materials - are trained in such basic safety issues as fire safety and that the training is reinforced with continuing education. The RPC is led by the "Group Safety Director," whose job is to monitor,

01/09/2006 MON 13:46  [TX/RX NO 9014]  ☒014

develop, and implement safety programs throughout ACCOR, including those employees or persons ACCOR trained that staff night trains including the train in question.

18. Upon information and belief, the ACCOR trained attendants did not inspected the railcar to ensure that it complied with all reasonable and common safety standards and that it did not contain any obvious defects or inherently defective or unreasonably dangerous conditions for passenger travel prior to departing the train station.

19. Upon information and belief, the ACCOR trained attendants failed to provide basic fire safety information to the Amore family prior to departing the train station.

20. Upon information and belief, the ACCOR trained attendants failed to identify and remedy obvious fire and safety violations on board the train such, as the failure to have sufficient fire extinguishers and failing to ensure that doors connecting the railcars remained unlocked so passengers would not be trapped inside the railcars.

21. After being alerted to the fire the ACCOR trained personnel did not aid the Amore family and the others trapped in their cachets, rather the ACCOR trained employees fled from the fire and allowed the fire to spread in severity. The ACCOR trained employees failed to take any reasonable steps to aid those burning to death in the railcar. When the train came to a halt in Nancy, France a small number of the trapped passengers were able to break through the railcar windows and escape. However, the ACCOR trained employees failed to alert first responders to the fact that they could gain immediate access to the railcar engulfed in flames by traversing through the attached railcar. The ACCOR trained personnel allowed the firemen to waste nearly fifteen minutes trying to break into the railcar from the exterior. Witnesses saw the Amore children futilely pounding on the

- 11 -

FIRST AMENDED COMPLAINT

reinforced railcar window with their fists while the first responders were trying to gain access.

22. Salvatore Amore witnessed the death of his wife and the deaths of his children. Salvatore Amore was conscious of his impending death and suffered severe physical and emotional pain and trauma before his death. Salvatore Amore was unable to save any of his family members because the Accor trained employees failed to ensure that the proper fire safety precautions had been taken.  Had the ACCOR trained employees been properly instructed, Salvatore Amore would not have been injured.

23. Oma Amore witnessed the deaths of her son, her daughter-in-law, and her grandchildren. Oma Amore was conscious of her impending death and suffered severe physical and emotional pain and trauma before her death. Oma Amore was unable to save any of her family members because the Accor trained employees failed to ensure that the proper fire safety precautions had been taken. Had the ACCOR trained employees been properly instructed, Oma Amore would not have been injured.

24. By the time the first responders finally breached the locked exterior door of the railcar those still on board were dead. At all times, the Amore family were conscious of their impending deaths and those of the other family members.

25. The French Minister for Infrastructure, Transportation, Lodging, Tourism & Marine Affairs did, on November 6, 2002, order the Vice-Chairman of the General Council for Bridges & Highways to investigate the causes of the accident. The report dated February 24, 2003, criticized the fire safety training provided by Accor as "excessively brief".

26. The ACCOR Defendants negligently, carelessly and with reckless disregard failed to adequately train their employees and/or train personnel in passenger safety, fire

- 12 -

FIRST AMENDED COMPLAINT

prevention, fire recognition, fire suppression, fire evacuation and rescue, or rescue and fire communication.

## CAUSES OF ACTION

### COUNT I: SURVIVAL ACTIONS BASED ON NEGLIGENCE
### D.C. CODE § 12-101: D.C. Code § 12-301(8)

27. The Plaintiffs collectively repeat and re-allege as if fully set forth herein paragraphs 1 – 26.

28. Defendants ACCOR owed duties to the decedents to provide comprehensive and reasonable safety and fire safety training to the attendants who served on the train. The defendants are jointly and severally liable for their actions and vicariously liable for the actions of their employees and those who received their training.

29. Defendants ACCOR owed separate duties as a common carrier of traveling passengers that is distinct and apart from their ordinary duty as alleged above. Common carriers and those entities generating revenue from their employees working on common carriers such as the subject train owe a standard of utmost care to their traveling fee-paying passengers, including the Amore family.

30. Defendant ACCOR breached its duty owed to the Plaintiffs' decedents by failing to properly and thoroughly train the attendants, and failing to refresh that training, in recognition of train safety violations or hazardous conditions, fire safety, train passenger safety, fire prevention, fire recognition, fire suppression, fire evacuation and rescue and fire communication. ACCOR breached its duty by failing to ensure that the Accor Academy provided competent and sufficient training regarding recognition of train safety violations or hazardous conditions, fire safety, train passenger safety, fire prevention, fire

FIRST AMENDED COMPLAINT

recognition, fire suppression, fire evacuation and rescue, and rescue and fire communication.

31. The aforesaid breaches of duties owed by these Defendants demonstrate their failure to use reasonable care under the circumstances. As the direct and proximate result of the aforesaid negligence, the Amore family was caused to suffer and die. The estates OMA AMORE and SALVATORE-AMORE and property owned by them in the District of Columbia were thereby impaired.

32. As a direct result of the wrongful acts of the Defendants as set forth in Counts I and II, decedent OMA AMORE and SALVATORE AMORE and each other member of the Amore family was caused to experience conscious pain and suffering prior to their deaths.

33. Said conscious pain and suffering has resulted in injury and damage to the decedents OMA AMORE and SALVATORE AMORE prior to their deaths.

34. WHEREFORE, Plaintiffs demand judgment against ACCOR Defendants jointly and severally in the amount exceeds the sum of $50,000, which sum shall be proven at trial.

## COUNT II: PUNITIVE DAMAGES
### D.C. CODE § 12-101; D.C. Code § 12-301(8)

35. T4e Plaintiffs collectively repeat and re-allege as if fully set forth herein paragraphs 1 – 35.

36. The wrongful acts of the Defendants set forth in Count I constitute a careless and reckless disregard for the safety and well being of the Amore family through knowing intentional

- 14 -

FIRST AMENDED COMPLAINT

acts, or those carried out with a reckless disregard, many of which were implemented for commercial gain by management to an egregious extent that implies malice.

WHEREFORE, Plaintiffs demand punitive damages in an amount to be proven at trial.

### Plaintiff demands a trial by Jury.

Respectfully submitted,

Read K. McCaffrey, Esquire, DC Bar # 413837
Christopher Hellmich, Esquire, DC Bar #468840
Patton Boggs LLP
2550 M Street, NW
Washington, DC 200237

Attorneys for Plaintiff

Dated: this 6th day of January, 2006

FIRST AMENDED COMPLAINT