Jul-22-03 03:03pm    From-PATTON BOGGS LLP                    20245763154440        T-290  P.02   F-062

# United States District Court

SOUTHERN            District of        NEW YORK

CAROLYN REERS, in her capacity as Personal
Representative of the Estates of SUSANNE
AMORE, deceased, and SALVATORE
MICHAEL AMORE, deceased, KATHRYN
MEYERS-TONUCCI, Individually and in her
capacity as Personal Representative of the Estate of
JEANNE MEYERS AMORE, deceased, and
GEORGE GUERTIN, in his capacity as Personal
Representative of the Estates of EMILY JEANNE
AMORE deceased, and MICHAEL B. AMORE,
deceased,

**SUMMONS IN A CIVIL ACTION**

Civil Action No.

                        Plaintiffs,

                    v.

## 03 CV 5360

DEUTSCHE BAHN AG, a Republic of Germany
Corporation, DEUTSCHE BAHN REISE &
TOURISTIK AG, a Republic of Germany
Corporation, DEUTSCHE
BAHN AUTOZUG AG, a Republic of Germany
Corporation, DEUTSCHE BAHN NACHZUG
AG, a Republic of Germany Corporation,
STINNES CORPORATION, a New York
Corporation, MR. VOLKER, an Individual,
ACCOR SA, a Republic of France Corporation,
ACCOR NORTH AMERICA, INC., a New York
Corporation, COMPAGNIE
INTERNATIONALE DES WAGONS-LITS, a
Republic of France Corporation, and ISG-DSG
GmbH, a Republic of Germany corporation,

                        Defendants.

TO:  SEE ATTACHED

      YOU ARE HEREBY SUMMONED and required to file with the Clerk of this Court and serve upon
PLAINTIFFS' ATTORNEY (name and address)

        James P. Kreindler, Esq.
        Andrew J. Maloney, III, Esq.
        Vincent R. Parrett, Esq.
        Kreindler & Kreindler
        100 Park Avenue, New York, NY 10017
        (212) 687-8181

an answer to the complaint which is herewith served upon you, within ~~20~~ 60 days after service of this summons
upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint.

CLERK  J. MICHAEL McMAHON                         DATE    JUL 21 2003

BY DEPUTY CLERK

Jul-22-03  03:03pm    From-PATTON BOGGS LLP                    20245783154440        T-290   P.03    F-862

<u>Defendants</u>

DEUTSCHE BAHN AG, a Republic of
Germany Corporation
Mr. Hartmut Mehdorn
Chairman and CEO
Deutsche Bahn AG
Potsdamer Platz 2
D-10785 Berlin, Germany

DEUTSCHE BAHN REISE & TOURISTIK AC,
a Republic of German Corporation
Goldgasse 2
50666 Koln

DEUTSCHE BAHN AUTOZUG AG,
a Republic of German Corporation
Konigswall 21
44137 Dortmund

DEUTSCHE BAHN NACHZUG, AG
a Republic of German Corporation
Konigswall 21
44137 Dortmund

STINNES CORPORATION, a
New York Corporation
Dr. Henning Maier
Stinnes Corporation
c/o Deutsche Bahn AG
120 White Plains Road
Tarrytown, New York 10591

HERR VOLKER
DEUTSCHE BAHN AG, a Republic of
Germany Corporation
Potsdamer Platz 2
D-10785 Berlin, Germany

ACCOR SA, a Republic of
France Corporation
Mr. John Du Monceau
Senior Vice Chairman
Accor SA

Jul-22-03 '03:03pm    From-PATTON BOGGS LLP                    20245763154440        T-290   P.04    F-062

Tour Maine Montparnasse
33, Avenue Du Maine
Paris 75015, France

ACCOR NORTH AMERICA, INC.,
a New York Corporation
Mr. Georges Le Mener
President
Accor North America, Inc.
c/o Accor SA
245 Park Avenue 26th floor
New York, NY

COMPAGNIE DES WAGONS-LITS
31 rue du colonel Pierre Avia
759 Paris Cedex 15
France

ISG-DSG GmbH

Jul-22-03  03:04pm  From-PATTON BOGGS LLP                20246763154440      T-280  P.05/23  F-062

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

CAROLYN REERS, in her capacity as Personal       )
Representative of the Estates of SUSANNE          )
AMORE, deceased,  and SALVATORE MICHAEL           )
AMORE, deceased, KATHRYN MEYERS-                  )
TONUCCI, Individually and in her capacity as      )
Personal Representative of the Estate of JEANNE   )
MEYERS AMORE, deceased, and GEORGE                )
GUERTIN, in his capacity as Personal Representative )
of the Estates of EMILY JEANNE AMORE             )
deceased, and MICHAEL B. AMORE, deceased,        )
                                                  )
                        Plaintiffs                )
                                                  )
            v.                                    )
                                                  )
                                                  )
                                                  )               COMPLAINT
                                                  )
                                                  )
DEUTSCHE BAHN AG, a Republic of Germany           )
Corporation, DEUTSCHE BAHN REISE &                )
TOURISTIK AG, a Republic of Germany               )
Corporation, DEUTSCHE BAHN AUTOZUG AG,            )
a Republic of Germany Corporation, DEUTSCHE       )
BAHN NACHZUG AG, a Republic of Germany            )        PLAINTIFFS DEMAND A
Corporation, STINNES CORPORATION, a New           )        TRIAL BY JURY
York Corporation, MR. VOLKER, an Individual,      )
ACCOR SA, a Republic of France Corporation,       )
ACCOR NORTH AMERICA, INC, a New York              )
Corporation, COMPAGNIE INTERNATIONALE             )
DES WAGONS-LITS, a Republic of France             )
Corporation, and ISG-DSG GmbH, A Republic of      )
Germany corporation,                              )
                                                  )
                        Defendants.               )
                                                  )
                                                  )

03  CV  5360

RECEIVED
JUL 21 2003
U.S.D.C. S.D. N.Y.
CASHIERS

100 Park Avenue
New York, NY 10017-5590

Jul-22-03  03:04pm    From-PATTON BOGGS LLP                    20245763154440        T-290   P.06/23   F-062

1    Plaintiffs, CAROLYN REERS, in her capacity as the Personal Representative of the Estates of

2    SUSANNE AMORE and SALVATORE MICHAEL AMORE and on behalf of their heirs and next of

3    kin, by her attorneys Patton Boggs LLP; and plaintiffs KATHRYN MEYERS-TONUCCI, individually

4    and as the Personal Representative of the Estate of JEANNE MEYERS AMORE and on behalf of her

5    heirs and next of kin, and GEORGE GUERTIN, in his capacity as Personal Representative of the

6    Estates of EMILY JEANNE AMORE and MICHAEL B. AMORE and their heirs and next of kin, by

7    their attorneys Kreindler & Kreindler LLP, respectfully allege:

8

9    ## PRELIMINARY STATEMENT

10

11   1.    On November 6, 2002, Susanne Amore, Salvatore Michael Amore, Jeanne Meyers Amore, Emily

12   Jeanne Amore and Michael B. Amore, hereafter "the Amore family" was enjoying the last phase of their

13   first European family vacation while traveling on an overnight train from Paris to Munich. They rode in

14   train D 261 ("subject train"), owned and operated by Société Nationale Chemins de Fer Francais

15   ("SNCF") and its subsidiary companies. The Amore family was assigned to and did travel in Deutsche

16   Bahn NACHZUG AG's Railcar # 120 ("subject Railcar"), which was consolidated as part of the subject

17   train.

18

19   2.    At 01:45 hrs, the train was approaching the Nancy, France train station about two hours after

20   departing *Paris Gare de l'Est* train station when the kitchenette in the subject Railcar caught fire.  A

21   Deutsche Bahn AutoZug AG employee known as "Mr. Volker" who was acting as the Railcar attendant

22   caused a fire and then failed to extinguish it. He also failed to alert the passengers in the Railcar to the

23   presence of the growing dangerous fire and abandoned the Railcar without stopping the train.

24

25   3.    The fire raged out of control blocking all standard exits.  Passengers in the Railcar were awoken

26   by the screams of other passengers minutes after the fire began.  Eventually, the train stopped when the

27

28

-2-

1  train crew was alerted by someone on the ground.  Several passengers were able to escape.  Those few

2  survivors immediately attempted to assist those still trapped inside the Railcar and saw trapped

3  passengers pounding futilely on the Railcar's reinforced window trying to break it with their fists.

4

5  4.    Shortly thereafter, firefighters from Nancy arrived on the scene and spent nearly 15 minutes

6  trying to pry open the exterior doors of the Railcar, which were improperly locked from the inside by

7  Deutsche Bahn's employee.  By the time they finally gained entry to the Railcar those still on board were

8  dead.

9

10  5.    This action seeks recovery from those defendants who are liable for these five wrongful deaths,

11  as well as damages for the conscious pain and suffering the five victims endured, and punitive damages.

12

13  ### JURISDICTION AND VENUE

14  6.    Jurisdiction is proper pursuant to 28 U.S.C. Section 1332(a)(2) in that the Plaintiffs are all

15  citizens and residents of states other than New York and the Defendants are each either New York

16  corporations or they are affiliated with New York corporations who are mere departments or agents

17  of the parent-defendant corporations, or derive substantial revenue from direct commerce

18  intentionally sought in the State of New York or from New York citizens and residents.  The amount

19  in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.

20

21

22  7.    Venue is proper in this District pursuant to 28 U.S.C. Section 1391(a)(1) in that Defendants have

23  entered the District in furtherance of their business and derive substantial revenue therefrom or are

24  affiliates of New York corporations which are mere departments of the foreign corporation or are in an

25  agency relationship with the foreign corporation, and are, therefore, subject to the personal jurisdiction

26  of this Court.

27

28

100 Park Avenue
New York, NY 10017-5590

## PARTIES

### PLAINTIFFS

8.    Plaintiff CAROLYN REERS, in her capacity as the Personal Representative of the ESTATE of SUSANNE BRUCKNER AMORE, ("OMA") deceased, who was citizen and resident of the State of Connecticut, was appointed Administratrix of this Estate on February 24, 2003.

9.    Plaintiff CAROLYN REERS, in her capacity as the Personal Representative of the ESTATE of SALVATORE MICHAEL AMORE, ("SALVARTORE AMORE"), deceased, who was a citizen and resident of the State of Connecticut was appointed Administratrix of this Estate on February 24, 2003.

10.    Plaintiff KATHY MEYERS TONUCCI in her capacity as the Personal Representative of the ESTATE of JEANNE MEYERS AMORE, ("JEANNE AMORE"), deceased, who was a citizen and resident of the State of Connecticut was appointed Administratrix of this Estate on December 2, 2002.

11.    Plaintiff GEORGE GUERTIN in his capacity as the Personal Representative of the ESTATE of EMILY JEANNE AMORE, ("EMILY AMORE"), a deceased minor, who was a citizen and resident of the State of Connecticut ("EMILY AMORE"), and THE ESTATE of MICHAEL B. AMORE, ("MICHAEL AMORE"), a deceased minor, who was a citizen and resident of the State of Connecticut was appointed Administrator of these Estates on December 20, 2002.

### DEFENDANTS

12.    Upon information and belief, Defendant, DEUTSCHE BAHN AG, is a publicly owned corporation duly organized and formed under the laws of the Republic of Germany. Upon information and belief, DEUTSCHE BANH AG owns multiple subsidiary corporations that are duly organized and

- 4 -

1  formed under the laws of the Republic of Germany.  (DEUTSCHE BAHN AG and its subsidiary

2  corporations are collectively referred to as "DB"). DB does business in the State of New York directly

3  and through its wholly owned subsidiaries that are mere departments or agencies of DB and from which

4  DB derives significant revenue from New York citizens.

5

6  13.    Upon information and belief, Defendant, DB REISE & TOURISTIK AG ("DB R&T"), is a

7  wholly owned subsidiary of DB and is a corporation duly organized and formed under the laws of the

8  Republic of Germany.

9

10  14.    Upon information and belief, Defendant, DB AUTOZUG AG ("DB AutoZug"), is a wholly

11  owned subsidiary of DB R&T and is a corporation duly organized and formed under the laws of the

12  Republic of Germany.

13

14  15.    Upon information and belief, Defendant, DB NACHZUG AG ("DB NACHZUG"), is a wholly

15  owned subsidiary of DB R&T and is a corporation duly organized and formed under the laws of the

16  Republic of Germany.

17

18  16.    Upon information and belief, Defendant, STINNES CORPORATION ("STINNES"), is a

19  corporation duly organized and formed under the laws of the State of New York and is a wholly owned

20  subsidiary of DB. STINNES is a mere department or agency of DB.

21

22  17.    Upon information and belief, Defendant, Mr. VOLKER ("VOLKER"), an individual, was at all

23  relevant times and is an employee of DB AutoZug, a wholly owned subsidiary of DB, R&T, itself a

24  wholly owned subsidiary of DB, and is a citizen and resident of the Republic of Germany.

25

26  18.    Upon information and belief, Defendant, ACCOR SA ("ACCOR"), is a corporation duly

27  organized and formed under the laws of the Republic of France. ACCOR does business in the State of

28  New York directly and through its wholly owned subsidiaries that are mere departments or agencies of

- 5 -

Kreindler & Kreindler
100 Park Avenue
New York, NY 10017-5590

1  ACCOR and from which ACCOR derives significant revenue from New York citizens. The "ACCOR

2  defendants" refers to ACCOR SA and all its subsidiaries.

3

4  19.   Upon information and belief, Defendant, ACCOR North America, Inc ("ACCOR N.A.") is a

5  corporation duly organized and formed under the laws of the State of New York and is a wholly owned

6  subsidiary of ACCOR.  ACCOR N.A is a mere department or agency of ACCOR.

7

8  20.   Upon information and belief, Defendant, COMPAGNIE INTERNATIONALE des

9  WAGONS-LITS ("CIWL"), is a wholly owned subsidiary of ACCOR and is corporation duly organized

10  and formed under the laws of the Republic of France.

11

12  21.   Upon information and belief, Defendant ISG-DSG GmbH, is a German corporation owned by

13  defendants CIWL and ACCOR.

### FACTS COMMON TO ALL COUNTS

### DB SUBJECT RAILCAR AND ITS INCORPORATION INTO SNCF SUBJECT TRAIN

22.   The subject Railcar was owned by DB NACHZUG, a wholly owned subsidiary of DB R&T,

18  itself a subsidiary of DB.  Upon information and belief, DB NACHZUG, or its predecessor in interest,

19  designed and ordered the construction of the subject Railcar in 1964.  Railcar # 120, model WLABmh

20  175.5, was manufactured by Hansa-Waggonbau GmbH, and was made entirely of wood.

21

22

23  23.   Railcar # 120 was intended to be used as a sleeper car providing passengers traveling in groups

24  of four or less with a private cabin that included a private bathroom.  DB NACHZUG's design

25  incorporated a small kitchenette at the rear of the Railcar.  The kitchenette was designed to be able to

26  allow for the preparation of hot meals cooked on an electrical hot-plate.  Located directly above or near

27  the hot-plate was the main electrical panel for the Railcar.

28

- 6 -

*Kreindler & Kreindler*
*100 Park Avenue*
*New York, NY 10017-5590*

24.    After more than 30 years of service Defendants DB and/or DB NACHZUG determined that Railcar #120 required certain refurbishments which occurred in 1996, 1998, and again in 1999. The 1998 refurbishment included a complete overhaul of the heating, lighting, and electrical systems onboard the Railcar, as well as the replacement of all passenger cabin windows.

25.    All of the refurbishments to Railcar #120 that occurred in the 1990s were performed by ISG-DSG GmbH of Munich, Germany. Upon information and belief, ISG-DSG was owned by Defendants CIWL and ACCOR.

26.    Before the first refurbishment of Railcar #120 in the 1990s, Defendant DB and/or its subsidiaries, upon information and belief, entered a contract with Defendants ACCOR and/or CIWL to refurbish certain DB railcars. Upon information and belief, the contract required that Defendants ACCOR and/or CIWL would refurbish Railcar # 120 in a manner that would ensure that the Railcar was reasonably safe and not unduly dangerous or defective. Contractual requirements serving to ensure the safe and comprehensive refurbishment of Railcar # 120 were intended to insure the safe conveyance of passengers traveling in Railcar # 120.

27.    Upon information and belief, Defendant DB entered into a contract in which SNCF agreed to incorporate DB and/or DB NACHZUG railcars into its trains. Upon information and belief, Defendants DB and/or DB NACHZUG promised to provide railcars for incorporation into SNCF trains that were mechanically sound, free of defects, safe for passenger travel and not unreasonably dangerous.

28.    Upon information and belief, Defendants DB and/or DB NACHZUG failed to ensure that Railcar # 120 was free of obvious defects or inherently defective or unreasonably dangerous conditions for passenger travel prior to incorporating it into the subject train.

- 7 -

29.     Upon information and belief, neither DB Defendants nor ACCOR Defendants inspected Railcar # 120 to ensure that it complied with all reasonable and common safety standards and that did not contain any obvious defects or inherently defective or unreasonably dangerous conditions for passenger travel prior to incorporating it into the subject train.

30.     The subject Railcar was incorporated into the subject train. Railcar #120's head-end was connected to the locomotive owned and operated by SNCF and/or one of its wholly owned subsidiaries. The rear of the subject Railcar was connected to Railcar #118, which was owned and operated by SNCF and/or its wholly owned subsidiaries.

31.     The DB Defendants and ACCOR Defendants negligently, carelessly and with reckless disregard failed to adequately train their employees in fire prevention, fire recognition, fire suppression, fire evacuation and rescue and fire communication.

## DEFECTIVE AND UNREASONABLY DANGEROUS DESIGN AND OPERATION OF RAILCAR #120

### THE FIRE

32.     Within three hours of departing *Gare de l'Est*, all five members of the Amon family and seven other passengers were killed by a fire that ravaged Railcar # 120. The fire that killed them started in the kitchenette of Railcar #120, which was at all times under the direct supervision and control of Defendant Volker. The fire resulted from Defendant Volker's careless placement of his civilian clothes either in front of an electrical panel or on the hot-plate, located directly below the electrical panel. The electrical panel or hot-plate ignited Defendant Volker's clothing, which in-turn started the wooden walls and ceiling on fire.

100 Park Avenue
New York, NY 10017-5590

-8-

33.    Upon discovering the fire, Defendant Volker initiated rudimentary attempts to extinguish the fire by swatting at it which only served to feed the fire causing it to rage out of control. Defendant Volker did not attempt to use the one fire extinguisher on board.

34.    Instead of waking the passengers in Railcar #120 and alerting them to the obvious danger Defendant Volker fled the car abandoning the unsuspecting and sleeping passengers, who were unable to communicate with other attendants in other cars.

35.    Defendant Volker ran through several train cars passing several employees of SNCF and employees of Defendant CIWL. SNCF and CIWL attendants witnessed Defendant Volker running through the Railcars in an obvious panic. CIWL employees unreasonably took no, or incorrect, action to retard the fire or assist the passengers in Railcar # 120 attempting to escape.

36.    By the time Defendant Volker finally located the conductor of the train, some ten cars away from Railcar # 120, the fire was engulfing Railcar #120. At the same time D 261 was passing through the Nancy, France train station where workers saw the flames more than six feet above the moving train. They immediately notified D 261 to begin emergency stopping procedures.

37.    Some of the terrified victims stranded in Railcar #120 were unable to exit the Railcar via the head-end exterior door because it had been locked by Defendant Volker and he had the only key to the lock, which he took with him when he abandoned Railcar # 120. Fire and smoke blocked their efforts to leave through SNCF's adjoining Railcar #118 to the rear. The only other possible means of emergency escape was through the windows of their cabins. The windows, however, were not made with pop-out emergency glass. Instead, they were comprised of reinforced glass with a laminated coating that made them especially difficult to break.

Kreindler & Kreindler
100 Park Avenue
New York, NY 10017-5590

38.    Emergency hammers were not stored immediately adjacent to the windows, requiring victims to search for them in the bathroom or find other means to break the windows. Many of the victims, including the Amore family, were unable to break the windows. The thick smoke laden with cyanide gas as a result of uniquely toxic plastics and foams that were burning was inhaled by the terrified passengers as they struggled to escape.

## CAUSES OF ACTION

### COUNT I: Wrongful Death Based on Negligence of DEUTSCHE BAHN AG; DEUTSCHE BAHN AUTOZUG AG; DEUTSCHE BAHN NACHZUG AG; DEUTSCHE BAHN REISE & TOURISTIK AG; STINNES CORPORATION

39.    The Plaintiffs collectively repeat and re-allege as if fully set forth herein paragraphs 1 – 38.

40.    Defendants DB owed duties to the Plaintiffs' decedents to safely design, build and operate Railcar # 120 and are jointly and severally liable for their actions and vicariously liable for the actions of their employees.

41.    Defendants DB owed separate duties as a common carrier of traveling passengers that is distinct and apart from their ordinary duty as alleged above. Common carriers and those entities generating revenue from their employees working on common carriers such as D 261 owe a standard of utmost care to their traveling fee paying passengers, including the Amore family.

42.    Defendants DB breached their duties owed to the Plaintiffs' decedents by committing one or more of the following separate and distinct negligent acts or omissions:

  • Failure to design and build Railcar #120 so as to ensure it could be operated safely;

  • Failure to refurbish Railcar # 120 so as to ensure that it complied with minimum reasonably safety measures;

- 10 -

- Failure to supervise the ACCOR and/or CIWL's refurbishments of Railcar # 120 so as to ensure the Railcar was safe and free of any defects or dangerous conditions that would render the Railcar unreasonably dangerous for passenger travel;

- Failure to inspect Railcar # 120 for obvious defects or dangerous conditions and discover defects that would render the Railcar unreasonably dangerous for passenger travel, prior to rendering Railcar # 120 to the SNCF for incorporation into D 261;

- Failure to ensure all wood materials in the Railcar were coated with appropriate fire retardant paint;

- Failure to remove all foam, plastics and other manufactured substances that emit a toxic gasses when ignited;

- Failure to instruct attendants not to place personal items, such as clothing on the hot plate in the kitchenette;

- Failure to instruct attendants not to hang items against the electric control panel;

- Failure to ensure the presence of two or more fire extinguishers were provided in Railcar #120;

- Failure to ensure that all fire extinguishers were placed in such a way as to be near the most likely source of fire;

- Failure to place emergency hammers near the windows;

- Failure to comply with industry standards for emergency window designs by adding a polyester sheet which hindered the passengers' ability to break the glass;

- Failure to properly train Volker in fire safety procedures;

- Failure to provide Volker with an assured means of communicating with members of the SNCF train;

- Failure to wake the passengers as soon as Volker became aware of the fire;

- Failure to assist the passengers to evacuate Railcar #120 into Railcar #118 before going in search of the conductor; and

- Failure to stop the train immediately upon recognition that the fire was out of control.

Kreindler & Kreindler
100 Park Avenue
New York, NY 10017-5590

43.    The aforesaid breaches of duties owed by these Defendants demonstrate their failure to use reasonable care under the circumstances. As the direct and proximate result of the aforesaid failures, the Amore family was caused to suffer and die.

44.    As the direct result of the Wrongful Deaths of the Amore family, the Plaintiffs, including the estates of the Amore family, and the surviving family members, sustained damages, including pecuniary losses, loss of support and earnings, consortium, society, companionship, prospective inheritance, care, love, guidance, training, education, and services, as well as damages for loss of life's enjoyment and grief, anxiety, and mental anguish, burial expenses and other damages.

WHEREFORE, the Plaintiffs demand judgment jointly and severally against Defendants DB, in the amount of SEVENTY FIVE MILLION ($75,000,000) DOLLARS.

COUNT II: Wrongful Death Based on Negligence of ACCOR SA, ACCOR NORTH AMERICA, INC. AND COMPAGNIE INTERNATIONALE DES WAGONS-LITS AND ISG-DSG GMBH (collectively "ACCOR").

45.    The Plaintiffs collectively repeat and re-allege as if fully set forth herein paragraphs 1 – 44.

46.    Defendants ACCOR owed duties to the Plaintiffs' decedents to safely design, build and operate Railcar # 120 and each are jointly and severally liable for their actions and vicariously liable for the actions of their employees.

47.    Defendants ACCOR owed separate duties as a common carrier of traveling passengers that is distinct and apart from their ordinary duty as alleged above. Common carriers and those entities generating revenue from their employees working on common carriers such as D 261 owe a standard of utmost care to their traveling fee paying passengers, including the Amore family.

48.    Defendant ACCOR breached its duty owed to the Plaintiffs' decedents by committing one or more of the following separate and distinct negligent acts or omissions:

- 12 -

Jul-22-03 03:07pm    From-PATTON BOGGS LLP    20245763154440    T-290    P.17/23    F-062

1       ● Failure to refurbish Railcar #120 so as to ensure that it was free of all defects, latent
2    and patent, and that it was not unduly dangerous or unreasonably unsafe for
    commercial passenger travel;

3       ● Failure to alert DB of all safety code violations on Railcar #120 regardless of whether
4    DB required that CIWL identify and report those violations to DB;

5       ● Failure to install safety windows with pop-out glass such that victims trapped in a fire
6    could quickly and safely open or break open the window to effect an emergency
7    escape;

   ● Failing to provide emergency hammers that would, in the hands of all foreseeable
8    passengers, be a device that would quickly, safely and reasonably break the safety
9    window installed in Railcar # 120;

   ● Failing to install a sufficient and proper emergency hammer directly at or near the
10    passenger cabin window;

11       ● Failure to install fixtures sufficient for holding or securing more than one fire
12    extinguisher in Railcar # 120;

13       ● Installing only one fire extinguisher in Railcar # 120;

14       ● Failure to remove exterior door latches that unlocked only from the inside of the
15    vehicle;

   ● Failure to design and install an exterior door anti-intrusion locks that would permit
16    emergency rescue workers to be able to gain prompt access from the outside of the
17    Railcar;

18       ● Pre-wiring Railcar # 120 for inter and intra railcar communication without installing
19    communication devices;

   ● Failure to install an emergency intercom system in Railcar #120 that would permit
20    immediate emergency communication with all passengers in Railcar # 120;

21       ● Failure to install a means to communicate with other railcars and the locomotive;

22       ● Failure to ensure that all wood in Railcar #120 was properly treated with fire retardant
23    material;

24       ● Failure to ensure that all foam and plastic fixtures complied with reasonable fire
25    safety specifications so as to limit or eliminate toxic fumes if the plastics and foams
    caught fire;

26       ● Failure to provide adequate fire safety training to its employees on board D261;

27       ● Failure to provide its employees on D261 with a means to communicate with other
28    SNCF officials on board the train;

1    ●    Failure to assist the trapped victims in Railcar # 120;

2    ●    Failure to attempt to retard or stop the spread of the fire in Railcar # 120;

3    ●    Failure to instruct CIWL employees how to fight or contain a fire using fire
4        extinguishers from their railcar; and

5    ●    Failure to assist fire rescue officials to find a quick entrance to Railcar #120 through
6        Railcar #118.

7

8    49.  The aforesaid breaches of duties owed by these Defendants demonstrate their failure to use

9    reasonable care under the circumstances. As the direct and proximate result of the aforesaid negligence,

10   the Amore family was caused to suffer and die.

11

12   50.  As the direct result of the Wrongful Deaths of the Amore family, the Plaintiffs, including the

13   estates of the Amore family, and the surviving family members, sustained damages, including pecuniary

14   losses, loss of support and earnings, consortium, society, companionship, prospective inheritance, care,

15   love, guidance, training, education, and services, as well as damages for loss of life's enjoyment and grief,

16   anxiety, and mental anguish, burial expenses and other damages.

17

18   WHEREFORE, the Plaintiffs demand judgment against the Defendants ACCOR jointly and severally in

19   the amount of SEVENTY FIVE MILLION ($75,000,000) DOLLARS.

20   COUNT III: WRONGFUL DEATH CAUSED BY DANGEROUS AND DEFECTIVE PRODUCT BY DEUTSCHE
21   BAHN AG; DEUTSCHE BAHN AUTOZUG AG; DEUTSCHE BAHN NACHZUG AG; DEUTSCHE BAHN
22   REISE & TOURISTIK AG; ACCOR SA AND ACCOR NORTH AMERICAN, INC., CIWL AND
     ISG-DSG GMBH

23

24   51.  The Plaintiffs collectively repeat and re-allege as if fully set forth herein paragraphs 1 – 50.

25

26   52.  Railcar # 120 was in a defective condition and was unreasonably dangerous to the fare paying

27   passengers riding in it when it was designed, manufactured, assembled, repaired, overhauled and

28

1   maintained by the DB and ACCOR defendants when it entered the stream of commerce and was used

2   by fare paying passengers in the manner that was anticipated.

3

4   53.     Defendants ACCOR, CIWL, ISG-DSG GmbH, DB, and DB NACHZUG designed,

5   manufactured, maintained and operated Railcar # 120 in an unreasonably dangerous condition by their:

6

7       *   Failure to design and build Railcar #120 so as to ensure it could be operated safely;

8       *   Failure to refurbish Railcar # 120 so as to ensure that it complied with minimum reasonably
        safety measures;

9

10      *   Failure to properly fireproof the wooden railcar;

11      *   Failure to supervise the ACCOR and/or CIWL and ISG-DSG GmbH's refurbishments of
        Railcar # 120 so as to ensure the Railcar was safe and free of any defects or dangerous
12      conditions that would render the Railcar unreasonably dangerous for passenger travel;

13      *   Failure to inspect Railcar # 120 for obvious defects or dangerous conditions and discover
        defects that would render the Railcar unreasonably dangerous for passenger travel, prior to
14      tendering Railcar # 120 to the SNCF for incorporation into D 261;

15      *   Failure to ensure all wood materials in the Railcar were coated with appropriate fire
        retardant paint;
16

17      *   Failure to remove all foam, plastics and other manufactured substances that emit a toxic
        gasses when ignited;
18

19      *   Failure to instruct attendants not to hang items against the electric control panel;

20      *   Failure to ensure the presence of two or more fire extinguishers were provided in Railcar
        #120;
21

22      *   Failure to ensure that all fire extinguishers were placed in such a way as to be near the most
        likely source of fire;

23      *   Failure to place emergency hammers near the windows;

24      *   Failure to comply with industry standards for emergency window designs by adding a
        polyester sheet which hindered the passengers' ability to break the glass;
25

26      *   Failure to properly train Volker in fire safety procedures;

27      *   Failure to provide Volker with an assured means of communicating with members of the
        SNCF train;
28

- 15 -

100 Park Avenue
New York, NY 10017-5590

- Failure to wake the passengers as soon as Volker became aware of the fire;

- Failure to assist the passengers to evacuate Railcar #120 into Railcar #118 before going in search of the conductor; and

- Failure to stop the train immediately upon recognition that the fire was out of control.

- Failure to implement a fire alert system to detect smoke, heat and fire and alert the passengers and crew;

- Failure to install and implement an effective communication system for train crew members and passengers; and

54.    As the direct and proximate result of the unreasonably dangerous and defective condition of the Defendants' product as previously described, the Amore family was caused to suffer and die.

55.    As the direct result of the Wrongful Deaths of the Amore family, the Plaintiffs, including the estates of the Amore family, and the surviving family members, sustained damages, including pecuniary losses, loss of support and earnings, consortium, society, companionship, prospective inheritance, care, love, guidance, training, education, and services, as well as damages for loss of life's enjoyment and grief, anxiety, and mental anguish, burial expenses and other damages.

WHEREFORE the Plaintiff demands judgment against the Defendants jointly and severally in the amount of SEVENTY FIVE MILLION ($75,000,000) DOLLARS.

COUNT IV:  WRONGFUL DEATH CAUSED BY BRACH OF IMPLIED WARRANTY BY DEUTSCHE BAHN AG, DEUTSCHE BAHN AUTOZUG AG, DEUTSCHE BAHN NACHZUG, DEUTSCHE BAHN REISE & TOURISTIK AG, MR. VOLKER, ACCOR SA, ACCOR NORTH AMERICA, INC. COMPAGNIE INTERNATIONALE DES WAGONS-LITS, STINNES CORPORATION AND ISG-DSG GMBH

56.    The Plaintiffs collectively repeat and re-allege as if fully set forth herein paragraphs 1 – 55.

57.    Implicit in the commercial transactions between the fare paying passengers, the Amore family, and the Defendants in the 'chain of commerce' were implied warranties of merchantability and fitness for a particular purpose.

- 16 -

58.    Railcar # 120 was in a defective condition and was unreasonably dangerous to the fare paying passengers riding in it constituting a breach of an implied warranty of merchantability as well as the implied warranty of fitness for a particular purpose extended by the Defendants to the Amore family because Railcar # 120 was not fit for the ordinary purposes for which such railcars are used.

59.    As the direct and proximate result of the Defendants' breach of the aforementioned implied warranties, the Amore family was caused to suffer and die.

60.    As the direct result of the Wrongful Deaths of the Amore family, the Plaintiffs, including the estates of the Amore family, and the surviving family members, sustained damages, including pecuniary losses, loss of support and earnings, consortium, society, companionship, prospective inheritance, care, love, guidance, training, education, and services, as well as damages for loss of life's enjoyment and grief, anxiety, and mental anguish, burial expenses and other damages.

WHEREFORE the Plaintiff demands judgment against the Defendants jointly and severally in the amount of SEVENTY FIVE MILLION ($75,000,000) DOLLARS.

COUNT V: SURVIVAL ACTIONS BASED ON NEGLIGENCE, PRODUCT LIABILITY AND BREACH OF WARRANTY AGAINST DEUTSCHE BAHN AG; DEUTSCHE BAHN AUTOZUG AG; DEUTSCHE BAHN NACHZUG AG; DEUTSCHE BAHN REISE & TOURISTIK AG

61.    The Plaintiffs collectively repeat and re-allege as if fully set forth herein paragraphs 1 – 60.

62.    As a direct result of the wrongful acts of the Defendants as set forth in Counts I thru V, each member of the Amore family was caused to experience conscious pain and suffering prior to their deaths.

Kreindler & Kreindler
100 Park Avenue
New York, NY 10017-5590

- 17 -

63. Said conscious pain and suffering has resulted in injury and damage to each member of the Amore family prior to their deaths, and caused added emotional distress and grief to be suffered by surviving family members.

WHEREFORE, Plaintiffs demand judgment against Defendants DB jointly and severally in the amount of SEVENTY FIVE MILLION ($75,000,000) DOLLARS.

COUNT VII: SURVIVAL ACTIONS BASED ON NEGLIGENCE, PRODUCT LIABILITY AND BREACH OF WARRANTY AGAINST ACCOR SA, ACCOR NORTH AMERICA, INC., AND COMPAGNIE INTERNATIONALE DES WAGONS-LITS, ISG-DSG GMBH (collectively "ACCOR").

64. The Plaintiffs collectively repeat and re-allege as if fully set forth herein paragraphs 1 – 63.

65. As a direct result of the wrongful acts of the Defendants as set forth in Counts I thru V, each member of the Amore family was caused to experience conscious pain and suffering prior to their deaths.

66. Said conscious pain and suffering has resulted in injury and damage to each member of the Amore family prior to their deaths, and caused added emotional distress and grief to be suffered by surviving family members.

WHEREFORE, Plaintiffs demand judgment against ACCOR Defendants jointly and severally in the amount of SEVENTY FIVE MILLION ($75,000,000) DOLLARS.

COUNT VII: PUNITIVE DAMAGES

67. The Plaintiffs collectively repeat and re-allege as if fully set forth herein paragraphs 1 – 66.

68. The wrongful acts of the Defendants set forth in Counts I through VII constitute a careless and reckless disregard for the safety and well being of the Amore family through knowing intentional acts, many implemented for commercial gain by management to an egregious extent implying malice.

- 18 -

Kreindler & Kreindler
100 Park Avenue
New York, NY 10017-5590

1   WHEREFORE, Plaintiffs demand punitive damages in the amount of ONE HUNDRED MILLION

2   ($100,000,000) DOLLARS against the Defendants.

3

4                                   Respectfully submitted,

5

6

7   Dated: this 21st day of July, 2003.        James P. Kreindler, Esquire (JK7084)
                                                Andrew J. Maloney, III, Esquire (AM8684)
8                                               Vincent I. Parrett, Esquire (VP5092)
                                                Kreindler & Kreindler LLP
9                                               New York, New York 10017-5590

10                                              By:  _James P. Kreindler_

11
                                                Attorneys For Plaintiffs
12                                              *Kathryn Meyers-Tonucci, Individually and as*
                                                *Personal Representative of the Estate of*
13                                              *Jeanne Meyers Amore, deceased and George*
                                                *Gerutin, as Personal Representative of the*
14                                              *Estates of Emily Jeanne Amore, deceased and*
                                                *Michael B. Amore, deceased*
15

16

17

18                                              Read K. McCaffrey, Esquire
                                                Christopher Hellmich, Esquire
19                                              Patton Boggs LLP
                                                2550 M Street, NW
20                                              Washington, DC 200237

21                                              Attorneys for Plaintiffs
                                                *Carolyn Reers, as Personal Representative of the Estates of Susanne*
22                                              *Amore, deceased, and Salvatore Michael Amore, deceased*

23

24

25

26

27

28
                                        - 19 -