**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

---

ROLLIN AMORE as co-administrator
of the Estates of Susanne Amore and Salvatore
Michael Amore, deceased,

                Plaintiffs

        v.

ACCOR SA, ACCOR NORTH AMERICA, INC.,
SOFITEL GROUP, LLC, and DOES 1-5,

                Defendants.

Civil No.: 1:06CV00198 (RMU)

**Oral Argument Requested**

---

**MOTION TO DISMISS OF DEFENDANTS**
**ACCOR SA AND ACCOR NORTH AMERICA, INC.**

Defendants Accor SA and Accor North America, Inc., by counsel and pursuant to Fed. R.

Civ. P. 12 (b)(2), (3), (5), (6) and the doctrine *forum non conveniens,* respectfully request this

court to dismiss plaintiff's first amended complaint in its entirety and with prejudice. In support

of this motion, defendants refer the court to the attached memorandum of points and authorities,

incorporated by reference as if fully set forth herein.

WHEREFORE, defendants respectfully request this motion be granted and that plaintiff's

first amended complaint be dismissed in its entirety and with prejudice.

        Respectfully submitted,

        WILSON, ELSER, MOSKOWITZ,
        EDELMAN & DICKER, LLP

By:            /S/              .
        Robert B. Wallace, Esquire (Bar No 108571)
        The Colorado Building, Suite 500

223677.1

1341 G. Street, N.W.
Washington, D.C. 20005
Tel.: (202) 626-7660
Fax: (202) 628-3606

Thomas A. Leghorn, Esquire (of counsel)
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
3 Gannett Drive
White Plains, New York 10604
Tel.: (914) 323-7000
Fax: (914) 323-7001

*Attorneys for Accor SA and Accor North America, Inc.*

## CERTIFICATE OF SERVICE & ELECTRONIC FILING

I hereby certify on this 13th day of February, 2006, I served the foregoing electronically upon Christopher W. Hellmich, Esq. and Read K. McCaffrey, Esq., Patton Boggs, LLP, 2550 M. St., N.W., Washington, D.C. 20037, counsel for plaintiff, and that the original signed documents are in the possession of the attorneys responsible for this filing and are available for review upon request.

/S/

_____

Robert B. Wallace, Esq.

223677.1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

---

ROLLIN AMORE as co-administrator
of the Estates of Susanne Amore and Salvatore
Michael Amore, deceased,

               Plaintiffs

          v.

ACCOR SA, ACCOR NORTH AMERICA, INC.,
SOFITEL GROUP, LLC, and DOES 1-5,

              Defendants.

Civil No.: 1:06CV00198 (RMU)

---

### MEMORANDUM OF POINTS & AUTHORITIES

      Defendants Accor SA and Accor North America, Inc. submit this memorandum of points and authorities in support of their motion to dismiss plaintiff's first amended complaint:

**I**

### FACTUAL BACKGROUND

      Susanne and Salvatore Michael Amore died in a railcar fire on an overnight train from Paris, France to Munich, Germany on November 6, 2002. The representative of their estates first sued Accor SA and Accor North America, Inc. ("Accor NA") in the U.S. District Court for the Southern District of New York. Judge Cedarbaum dismissed the claim against Accor NA for failure to state a claim under Fed. R. Civ. P. 12 (b)(6) and dismissed the action against Accor SA pursuant to the doctrine of *forum non conveniens*.

223677.1

Instead of pursuing an appeal of Judge Cedarbaum's decision or bringing an action in France, the same estates commenced litigation arising from the same events in the Superior Court for the District of Columbia. Accor NA respectfully submits that Judge Cedarbaum's dismissal of the complaint against Accor NA bars relitigation of that claim as a matter of *res judicata*. Plaintiff is also collaterally estopped from re-litigating *forum non conveniens* as to Accor SA. Alternatively, plaintiff's complaint should be dismissed on the merits of the *forum non conveniens* and failure to state a claim defenses. Finally, plaintiff's action should be dismissed for improper service and lack of personal jurisdiction over Accor SA.

A.    *November 6, 2002 Railcar Fire Near Nancy, France.*

Plaintiff Rollin Amore is the son of Susanne Amore and the brother of Salvatore Michael Amore. (Complaint Ex. A ¶ 1, 15.) Susanne and Salvatore Michael Amore were traveling in Europe in November 2002, along with Mr. Amore's wife and two children. (Ex. A ¶ 1, 15.) The Amore family boarded an overnight train from Paris to Munich on November 5, 2002. (Ex. A ¶ 1, 15.) A fire started in their railcar at approximately 1:45 a.m. on November 6, 2002, near Nancy, France. (Ex. A ¶ 1, 15.) Twelve passengers, including the Amore family, died in the fire. (Ex. A ¶ 1, 15.)

Socièté Nationale Chemins de Fer Français, the French national railway, operated the train. (SDNY Complaint Ex. B ¶ 1.) Deutsche Bahn AutoZug AG, a subsidiary of Deutsche Bahn AG, the German national rail operator, owned the railcar. (Ex. B ¶ 22.) Deutsche Bahn Reise & Touristik AG employed Janz Volker as a railcar attendant. (Ex. B ¶ 17.) Plaintiff claimed that Mr. Volker was the attendant assigned to the Amore family's railcar. (Ex. B ¶¶ 32-38.) Mr. Volker allegedly started the fire, failed to extinguish the flames, abandoned his post, and failed to evacuate the railcar's passengers. (Ex. B ¶¶ 32-38.)

4

**B.**     *Amore Family Litigation In U.S. District Court – Southern District Of New York.*

Carolyn Reers, as personal representative of the estates of Susanne and Salvatore Michael Amore, commenced wrongful death and survival actions in the United States District Court for the Southern District of New York arising from the events of November 6, 2002. (Ex. B ¶¶ 1-5, 8-9.)  Ms. Reers, represented by the same attorneys appearing for plaintiff in this case, sued a variety of defendants, including Accor SA and Accor NA. (Ex. B ¶¶ 12-21.)  She claimed that employees of Accor SA, a French corporation, and Accor NA, incorporated in Delaware and headquartered in Texas, were negligent in connection with the maintenance and operation of the Paris-Munich train and its railcars. (Ex. B ¶¶ 46-50.)

Accor NA moved to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12 (b)(6). (Dec. 2003 Order Ex. C.) The estates' representative did not oppose Accor NA's motion to dismiss. (Pl's Opp'n Ex. D at 6.)  In fact, the estates' representative's attorneys conceded: "Your Honor will remember when we were here before we agreed to dismiss Accor NA.  We didn't allege that Accor NA did anything wrong." (Colloquy Ex. E at 27, ln. 13-15.)  As such, Judge Cedarbaum granted Accor NA's motion to dismiss the complaint for failure to state a claim. (Dec. 2003 Order Ex. C.)

Accor SA then moved to dismiss the plaintiff's complaint, *inter alia*, on the grounds of *forum non conveniens*. (Opinion Ex. F at 34-46.) The court granted Accor SA's motion, finding that France was an adequate alternative forum and that the private and public interest factors required by *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1997) favored disposition in France. (Ex. F at 34-46.)  According to the Civil Docket, Ms. Reers filed, but did not perfect, an appeal. (Civil Docket Ex. G Docs. 24, 37.)

5

**C.      _Amore Family Litigation In District Of Columbia._**

The representatives of the estates of Susanne and Salvatore Michael Amore did not

commence an action in France after Judge Cedarbaum dismissed the Southern District of New

York litigation on _forum non conveniens_ grounds. Instead, a different representative for the

estates, Rollin Amore, filed a complaint in Superior Court, District of Columbia on November 7,

2005. Plaintiff then filed the first amended complaint on January 6, 2006. (Ex. A.)

This case is nearly identical to the Southern District of New York litigation. The action

was brought on behalf of two of the same estates. (Ex. A ¶¶ 3-5; Ex. B ¶¶ 8-11.) Plaintiff's first

amended complaint alleged the same events as the basis for liability. (Ex. A ¶ 15; Ex. B ¶¶ 32-

38.) Plaintiff sued two of the same defendants – Accor SA and Accor NA (Ex. A 3-5; Ex. B ¶¶

18-19.) Plaintiff is represented by the same attorneys – Patton Boggs, LLP. (Ex. A; Ex. B.) The

representative of the estates sought survival damages in both cases.  (Ex. A ¶ 11; Ex. B ¶¶ 5, 61-

66.)

Plaintiff's attorneys purported to serve Accor NA by delivering the summons and first

amended complaint to Corporation Service Co. on January 6, 2006. Plaintiff's attorneys

attempted to serve Accor SA and Sofitel Group, LLC by delivering the summons and complaint

to the manager of the Sofitel Hotel on 15th Street, NW, Washington, D.C.  Plaintiff's attorney

also attempted to serve Accor SA via the Mayor's office for the District of Columbia pursuant to

D.C. Code § 29-101.108. (Ex. A at 4.)  Accor NA and Accor SA then removed this case pursuant

to 28 U.S.C. § 1441, _et seq._, on February 6, 2006.

**D.      _Accor NA, Accor SA & Sofitel Group, LLC._**

Accor NA is not a wholly-owned subsidiary of Accor SA, contrary to plaintiff's

allegations. (Ex. A ¶ 6.)  Accor SA is headquartered and incorporated in France and is not

registered or otherwise authorized to conduct business in the District of Columbia. (Rabinowitz Decl. Ex. H ¶¶ 4, 7; Todorov Decl. Ex. I ¶ 3.) Accor NA is a Delaware corporation with offices in Texas. (Ex. H ¶ 2.) Defendant Accor SA owns 62.14% of Accor Lodging North America, Inc., which owns 100% of Accor Business and Leisure North America, Inc., which owns 100% of IBL Limited, LLC, which owns 100% of defendant Accor NA. (Ex. H ¶ 5; Ex. I ¶ 4.)

There is no affiliate or subsidiary of Accor SA or Accor NA known as "Sofitel Group, LLC." (Ex. H ¶ 9; Ex. I ¶ 7.) There appears to be an entity known as "Sofitel Group, LLC" incorporated in Washington, D.C.  However, this entity is not and never was an affiliate or subsidiary of either Accor defendant and is not the corporation that manages and operates the Sofitel Lafayette Square hotel on 15th Street, NW in Washington, D.C.  (Ex. H ¶ 9; Ex. I ¶ 7.)  In fact, according to the District of Columbia Department of Consumer and Regulatory Affairs, the certificate of authority for "Sofitel Group, LLC" was revoked on November 14, 2005 for failure to file timely reports. (DCRA Report Ex. J.)

## II

## ARGUMENT

Plaintiff's complaint should be dismissed for several reasons.  Plaintiff should be precluded from re-litigating the dismissals in favor of Accor NA and Accor SA as a matter of *res judicata* and collateral estoppel.  Even if plaintiff's claim is not precluded by *res judicata* or collateral estoppel, the action should be dismissed for failure to state a claim against Accor NA and on *forum non conveniens* grounds against Accor SA.  Moreover, plaintiff's action should be dismissed for lack of personal jurisdiction and improper service on Accor SA.

223677.1

**A.** **_Plaintiff's Claim Against Accor NA Is Barred By Res Judicata Pursuant To The Southern District Of New York's Order Granting Accor NA's Motion To Dismiss._**

A judgment rendered on the merits "constitutes an absolute bar to a subsequent action." *Cromwell v. Sac County*, 94 U.S. 351, 352 (1876). A claim is precluded as a matter of *res judicata* when four criteria are met: (1) a final judgment on the merits was reached in the prior litigation; (2) the prior action involved the same parties or their privies; (3) the prior action involved the same claim; and (4) the prior judgment was rendered by a court of competent jurisdiction. *Polsby v. Thompson*, 201 F. Supp. 2d 45, 48 (D.D.C. 2002); *I.A.M. Nat'l Pension Fund v. Industrial Gear Mfg. Co.*, 723 F.2d 944, 946-947 (D.C. Cir. 1983).

A judgment is on the merits if it "disposes of the underlying cause of action." *Polsby*, 201 F. Supp. 2d at 48 ("a judgment is considered on the merits when a court renders a decision after considering the legal claim."). A qualifying judgment is based on the legal rights of the parties, as opposed to mere matters of practice. *Harper Plastics, Inc. v. Amoco Chems. Corp.*, 657 F.2d 939, 943 (7th Cir. 1981). The dismissal of a claim pursuant to Fed. R. Civ. P. 12 (b)(6) is a judgment on the merits for the purposes of applying the doctrine of *res judicata*. *Federated Department Stores, Inc. v. Mottie*, 452 U.S. 394, 399 n.3 (1981).

*Res judicata* effect may be given to a judgment issued against a party's privy. *Polsby*, 201 F. Supp. 2d at 48. Beneficiaries of a decedent's estate are in privity with the estate's administrator for *res judicata* purposes. *First Nat'l Bank v. Ickes*, 154 F.2d 851, 853 n.9 (D.C. Cir. 1946) (trustee and administrator of estate in privity for *res judicata* purposes because acting in same capacity); *McCrocklin v. Fowler*, 285 F. Supp. 41, 43 (E.D. Wis. 1968), *aff'd*, 411 F.2d 580 (7th Cir. 1969) (beneficiary of estate in privity with administrator for *res judicata* purposes).

The determination of whether the subsequent claim is sufficiently identical to the prior claim depends on whether the claims each arise from the same "transaction or series of

8

connected transactions." Restatement (Second) of Judgments § 24 (1982). In which case, *res judicata* extinguishes "all rights of the plaintiff to remedies against the defendant with respect to all or any part" of the claim. *Id.* Another approach to determining whether *res judicata* applies evaluates whether the claims arise from the "same set of factual allegations." *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1363 (Fed. Cir. 2000).

Plaintiff's claim against Accor NA meets the *res judicata* criteria. Accor NA moved to dismiss the estates' representative's complaint in the Southern District of New York pursuant to Fed. R. Civ. P. 12 (b)(6). Accor NA's motion was unopposed. (Ex. D at 6.) The estates' representative's attorneys even conceded: "We didn't allege that Accor NA did anything wrong." (Ex. E at 27, ln. 13-15.) As a result, Judge Cedarbaum granted Accor NA's motion to dismiss pursuant to Fed. R. Civ. P. 12 (b)(6). (Ex. C.)

Both claims against Accor NA arose from the same "transaction or series of connected transactions" and the "same factual allegations." (Ex. A ¶ 15; Ex. B ¶¶ 32-38.) Rollin Amore, both as co-administrator and a beneficiary of the estates, is in privity with Ms. Reers for the purposes of *res judicata. See Ickes*, 154 F.2d at 853 n.9. Moreover, the Southern District of New York's disposition of the defendant's Fed. R. Civ. P. 12 (b)(6) motion constituted a judgment "on the merits" by a court of competent jurisdiction. *Mottie*, 452 U.S. at 399 n.3. Accordingly, plaintiff's action against Accor NA should be barred as a matter of *res judicata.*

**B.** **_Plaintiff's Claim Against Accor SA Is Barred By Collateral Estoppel Pursuant To The Southern District Of New York's Dismissal On Forum Non Conveniens Grounds._**

A party is only entitled to one fair opportunity to litigate an issue, even if the resolution of the issue does not dispose of the merits of the claim for *res judicata* purposes. Once the issue is determined by a court of competent jurisdiction, the collateral estoppel doctrine forecloses relitigation of the same issue in subsequent suits. *Montana v. United States*, 440 U.S. 147, 153

9

(1979); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979).  The purpose of the collateral estoppel rule is to relieve parties of the "cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry* 449 U.S. 90, 94 (1980).

Four criteria govern the application of the collateral estoppel doctrine.  First, the issue must be identical to an issue raised in the prior litigation.  Second, the issue must have been actually litigated, that is contested by the parties and submitted for determination by the court.  Third, the issue must have been actually and necessarily determined by a court of competent jurisdiction.  Finally, preclusion must not work an unfairness. *Jack Faucett Assoc., Inc. v. American Tel. & Tel. Co.,* 744 F.2d 118, 125 (D.C. Cir. 1984).

### 1. The Issue Presented In This Case Is Identical To The *Forum Non Conveniens* Issue Addressed In The Southern District Of New York.

The identity of issues requirement is met when one federal district court is asked to give preclusive effect to the *forum non conveniens* decision of another federal district court. *Pastewka v. Texaco, Inc.,* 565 F.2d 851 (3d Cir. 1977), involved an analogous application of the doctrines of issue preclusion and *forum non conveniens*.  Two separate collisions involving three commercial vessels of foreign registry resulted in the deaths of several sailors in the English Channel in January 1970. *Pastewka,* 565 F.2d at 852. The estates of twelve deceased crewmen sued Texaco, Inc. and Texaco Panama, Inc. ("Texpan"), owners of one of the vessels, in the U.S. District Court for the Southern District of New York. *Id.*

The estates of the same sailors also commenced separate, but identical litigation in the U.S District Court for the District of Delaware. *Id.*  Defendants then moved to dismiss the complaint in the Southern District of New York, arguing that England was the logical forum. *Id.* The Southern District of New York granted defendants' motion to dismiss on *forum non*

223677.1

*conveniens* grounds and the Second Circuit affirmed. *Id.* Defendants then moved to dismiss the

District of Delaware cases, arguing that collateral estoppel foreclosed relitigation of the Southern

District of New York's *forum non conveniens* decision. *Id.* at 852-853. The District of Delaware

granted defendants' motion and the Third Circuit affirmed. *Id.*

The Third Circuit found that giving preclusive effect to the *forum non conveniens*

*decision* of the Southern District of New York was appropriate because:

> In this case the appellants point to identical objective criteria and
> rely on identical material facts underlying the application of those
> criteria. Their contention amounts to no more than a wish that, in
> applying the objective criteria to the undisputed facts, a different
> judge would make the discretionary *forum non conveniens*
> determination.   ***If appellants expected the district judge in
> Delaware to exercise a more discreet discretion than his judicial
> brother in the Southern District of New York, then they should
> have begun their litigation in Delaware.  Having now finally lost
> in New York, they cannot relitigate the same factual and legal
> issues in Delaware.***

*Pastewka,* 565 F.2d at 854 (emphasis added).

The Third Circuit's decision in *Pastewka, supra,* demonstrates that the factual and legal

issues involved in deciding *forum non conveniens* motions are sufficiently identical for the

purpose of giving the decision preclusive effect. Determining whether a foreign forum is more

appropriate than entertaining a matter in a U.S. court is governed by *Gulf Oil Corp. v. Gilbert*,

330 U.S. 501 (1997), which provides a two-pronged analysis of *forum non conveniens*. First, the

court must assess whether there is an adequate alternative foreign forum. *Gilbert*, 330 U.S. at

508-509. Second, the court must evaluate several private and public interest factors to determine

the most appropriate venue. *Id.*

This analysis is not changed by virtue of plaintiff's efforts to commence this litigation in

the District of Columbia, as opposed to New York.  As in New York, this court would be

required to determine whether France is an appropriate alternative forum. Judge Cedarbaum already concluded, "[b]ecause defendants are subject to the jurisdiction of the French courts and those courts will hear plaintiffs claims, defendants have shown that France is an adequate alternative forum." (Ex. F at 36-38.) This court would also be required to evaluate the private and public interest factors, which Judge Cedarbaum found to favor disposition in France. (Ex. F at 37-46.)

There is no reason to believe these factual and legal evaluations would be any different in the U.S. District Court for the District of Columbia. The plaintiff, his decedents, the defendants, and the events are no more strongly connected to this venue than they were to New York. Accordingly, the *forum non conveniens* evaluation in the Southern District of New York is sufficiently identical to the evaluation that would be required of this court so as to justify application of the collateral estoppel doctrine and dismissal of plaintiff's complaint.

## 2. Plaintiff Is Bound By The Southern District Of New York Decision Because His Legal Rights Were Fully Represented.

The legal rights of a party against whom issue preclusion is sought must have been fully represented in the prior action. *Kraushaar v. Flanigan*, 45 F.3d 1040, 1050 (7th Cir. 1995). Collateral estoppel may also be invoked against those in privity to the party involved in the prior litigation. *Shore*, 439 U.S. at 327 n.7. As mentioned above, beneficiaries of an estate are in privity with the estate's administrator for the purposes of establishing privity. *Ickes*, 154 F.2d at 853 n.9 (trustee and administrator of estate in privity for *res judicata* purposes because acting in same role); *McCrocklin*, 285 F. Supp. at 43 (beneficiary of estate in privity with administrator for *res judicata* purposes).

The parties against whom preclusive effect in this case is sought are sufficiently identical for the purposes of collateral estoppel. The estates of Susanne and Salvatore Michael Amore

12

were represented in both cases. (Ex. A; Ex. B.) The substitution of one representative, Carolyn

Reers, for another, Rollin Amore, should not matter.  The interests of the estates and their

beneficiaries were represented and litigated in New York.  The same interests are presented in

the District of Columbia litigation.  Accordingly, Rollin Amore, both as an administrator and a

beneficiary, was represented by and privy to Ms. Reers in the prior proceeding.

### 3.  Plaintiff Was Not Denied A Full And Fair Opportunity To Litigate The Issue In The Southern District Of New York.

The representative of the estates of Susanne and Salvatore Michael Amore had a full and

fair opportunity to litigate the *forum non conveniens* issue in the Southern District of New York

litigation.  The estates' representative filed extensive briefs arguing her opposition to defendants'

motion. (Ex. G Docs. 21-23.)  In fact, estates' representative's attorneys moved for and obtained

an order granting an expansion of the page limit for their opposition to the Deutsche Bahn

defendants' motions to dismiss. (Ex. G Docs 24-25.)

Moreover, as demonstrated by Judge Cedarbaum's forty-six-page opinion, the *forum non

conveniens* issues were litigated extensively by both sides.  The estates' representative argued

that France was not an adequate forum because they found the remedy under French law to be

unsatisfactory.  (Ex. F at 35-36.)  The estates' representative also made several arguments

concerning the *Gilbert* private and public interest factors. (Ex. F at 37-45.)  The court rejected

these arguments. (Ex. F at 35-45.)  As such, the estates' representative was not denied a full and

fair opportunity to litigate *forum non conveniens* in the prior proceeding.

Finally, Judge Cedarbaum's opinion actually determined the *forum non conveniens* issue

for the purposes of collateral estoppel by concluding that France was an adequate alternative

forum and that the public and private interest factors favored disposition in France. (Ex. F at 35-

39.)  The conclusions formed a critical and necessary part of her decision to grant Accor SA's

motion to dismiss that resulted in judgment in favor of the defendant. (Ex. G Doc. 33.)

**C.    *Even If Judge Cedarbaum's Decision Is Not Entitled To Preclusive Effect, Plaintiff's Claim Should Be Dismissed For Failure To State A Claim & Forum Non Conveniens.***

Plaintiff's claims against Accor SA and Accor NA should be dismissed, even if the

doctrines of collateral estoppel and *res judicata* are not applied.   Plaintiff's first amended

complaint fails to state a claim against Accor NA pursuant to Fed. R. Civ. P. 12 (b)(6).

Plaintiff's claims against Accor SA should be dismissed on *forum non conveniens* grounds.

**1.    Plaintiff's Complaint Failed to State a Claim Against Accor NA Because There is no Allegation Connecting Accor NA to the Events of November 6, 2002.**

Fed. R. Civ. P. 12 (b)(6) provides that a plaintiff's complaint may be dismissed for

"failure to state a claim upon which relief can be granted."  A defendant moving to dismiss under

Fed. R. Civ. P. 12 (b)(6) must prove "beyond doubt that the plaintiff can prove no set of facts in

support of his claim [that] would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46

(1957).  The court must accept the plaintiff's factual allegations as true, drawing all reasonable

inferences in plaintiff's favor, for the purposes of deciding a motion to dismiss under Fed. R.

Civ. P. 12 (b(6). *C&E Servs. v. D.C. Water & Sewer Auth.,* 310 F.3d 197, 199 (D.C. Cir. 2002).

Plaintiff's first amended complaint referred to Accor SA as "ACCOR" and referred to

Accor NA as "ACCOR N.A." (Ex. A at 3-5.)  Plaintiff claimed that "ACCOR" owned and

operated the "Accor Academy." (Ex. A ¶ 16.)   Plaintiff claimed that "ACCOR" trained

attendants on the train on which the Amore family were passengers. (Ex. A ¶ 17.)  Plaintiff

further claimed that "ACCOR trained attendants" failed to inspect the railcar, provide basic fire

safety information, identify and remedy fire and safety violations, and take reasonable steps to

evacuate the railcar. (Ex. A ¶¶ 18-20.)

14

However, there is no allegation that "ACCOR N.A." owned or operated "Accor Academy." (Ex. A.) There is no allegation that "ACCOR N.A." participated in any way in "Accor Academy." (Ex. A.) There is no allegation that "ACCOR N.A." provided any training to any of the railcar attendants on November 6, 2002. (Ex. A.) There is no allegation that anyone connected with the events of November 6, 2002 or "Accor Academy" was an employee or agent of "ACCOR N.A." (Ex. A.) In fact, there is no allegation that "ACCOR N.A." was involved, in any way, with the Paris-Munich train on which the Amores were passengers. (Ex. A.)

Defendants respectfully submit that plaintiff sued Accor NA for the sole purpose of creating the illusion that litigating this claim in the United States, as opposed to in a French court, is somehow justified and appropriate. There is absolutely no connection between Accor NA and the events of November 6, 2002 in Nancy, France. (Ex. H ¶ 8; Ex. I ¶ 6.) Nor is there any connection to Accor NA's activities and the training provided at "Accor Academy." (Ex. H ¶ 8; Ex. I ¶ 6.) There is no allegation connecting Accor NA to the allegedly negligent training provided to the train's attendants. (Ex. A.) The estates' representative's attonreys even admitted in the New York litigation, "We didn't allege that Accor NA did anything wrong." (Ex. E at 27, ln. 13-15.)

## 2. Plaintiff's First Amended Complaint Should Be Dismissed in Favor of Accor SA on Forum Non Conveniens Grounds.

Plaintiff's action against Accor SA should be dismissed on *forum non conveniens* grounds, even if this court finds that the Southern District of New York's decision is not entitled to collateral estoppel effect. As stated above, *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1997), requires the court to evaluate the adequacy of the alternative foreign forum, as well as several private and public interest factors. Accor SA adopts and incorporates Judge Cedarbaum's *Gilbert* analysis in support of this motion. (Ex. D.)

In addition to the reasoning of Judge Cedarbaum's opinion, the suggestion in plaintiff's complaint that the District of Columbia action is justified by plaintiff's inability to make a survival claim under French law is precluded, immaterial, and wrong. As discussed above, Judge Cedarbaum found that the available remedy under French law was not "unsatisfactory." (Ex. F at 35-36.) This finding is particularly significant, considering that the estates' representative asserted both wrongful death and survival claims in the Southern District of New York litigation. (Ex. B.) As such, plaintiff's argument that French law does not recognize a survival action is precluded by Judge Cedarbaum's decision.

Nevertheless, plaintiff's assertion reflects a fundamental misunderstanding of the doctrine of *forum non conveniens*. Even though a plaintiff's recovery may be smaller in a foreign court than it would be in a domestic court, it is not "unsatisfactory" if there is "no danger [plaintiff] will be deprived of any remedy or treated unfairly." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1982). This is not the case in France, where plaintiff would have an opportunity to recover, even if that recovery does not match what would be available in a U.S. court. As a result, the doctrine of *forum non conveniens* nonetheless applies to plaintiff's claim and justifies dismissal.

Furthermore, plaintiff's suggestion that the action should proceed in the District of Columbia because French law does not recognize a survival claim ignores choice of law principles. The District of Columbia follows the governmental-interest test for determining choice of law. *Vaughan v. Nationwide Mut. Ins. Co.*, 702 A.2d 198, 202 (D.C. 1997). The connection between plaintiff, his decedents, the Accor defendants and the events alleged in the complaint to the District of Columbia are tenuous at best. France, on the other hand, has an extremely strong relationship to the events, parties, and witnesses and a more substantial

16

governmental interest in the matter. As a result, French law would likely govern, regardless of plaintiff's concerns about French remedies.

Finally, defendants submit that plaintiff's assertion that French law does not recognize a survival claim is wrong. Civil Code Art. 1382 states: "Any act whatever of man, which causes damage to another, obliges the one by whose fault it occurred, to compensate it." Civil Code Art. 1383 states: "Everyone is liable for the damage he causes not only by his intentional act, but also by his negligent conduct or by his imprudence." Finally, the Second Circuit observed in *In Re Air Disaster at Lockerbie*, 928 F.2d 1267, 1282 (2d Cir. 1991), that "French law considers fault in those cases where it is awarding 'dommage moral,' or moral damages, which are usually equivalent to damages for pain and suffering, grief, shame, or disfiguration."

**D.** **_This Court Lacks Personal Jurisdiction Because Accor SA Is Not Doing Business And Does Not Maintain Minimum Contacts In The District of Columbia._**

General jurisdiction refers to a state exercising personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contact with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.15 (1985). Specific jurisdiction requires the plaintiff's claim to arise from certain jurisdiction-conferring conduct, such as the defendant's contacts with the forum. *Rudzewicz*, 471 U.S. at 472 n.15. As stated more fully below, neither general nor specific jurisdiction exists over Accor SA.

**1. This Court Lacks General Jurisdiction Because Accor SA Is Not Doing Business In The District Of Columbia.**

Courts may exercise general jurisdiction in the District of Columbia over a foreign corporation as to claims not arising from the corporation's conduct in the District if the corporation is "doing business" in the District. D.C. Code § 13-334; *see also Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 509 (D.C. Cir. 2002). Due process permits personal

223677.1

jurisdiction over foreign corporations only "if the defendant's business contacts with the forum district are 'continuous and systematic.'" *Gorman*, 293 F.3d at 509. The scope of the court's jurisdiction in the District of Columbia for a foreign corporation that is "doing business" in the District is coextensive with constitutional due process. *Id.* at 510.

A foreign corporation's contacts with a forum typically may not be attributed to its affiliated corporations. *Diamond Chem. Co., Inc. v. Atofina Chem. Inc.,* 268 F. Supp. 2d 1, 10-11 (D.D.C. 2003). However, the foreign corporation's contacts may be attributed to the affiliated corporation if the companies are "alter egos" of each other. *Diamond Chem. Co, Inc.,* 268 F. Supp. 2d at 11. Determining whether corporations are "alter egos," requires an evaluation of whether a "unity of ownership and interest" exists between the companies. *Id.*

As such, plaintiff must prove that "the corporation is not only controlled by those [alleged to be alter egos], but also that the separateness of the persons and the corporation has ceased and ... an adherence to the fiction of the separate existence of the corporation would sanction a fraud or promote injustice." *Camacho v. 1440 Rhode Island Avenue Corp.,* 620 A.2d 242, 248-249 (D.C. 1993). The court's decision should be influenced by "considerations of who should bear the risk of loss and what degree of legitimacy exists for those claiming the limited liability protection of the corporation." *Camacho,* 620 A.2d at 248-249.

In this case, plaintiff's first amended complaint asserted that Accor SA is "doing business" in the District of Columbia for the purpose of establishing general jurisdiction. Plaintiff's first amended complaint also asserted that Accor NA and Sofitel Group, LLC were "alter egos" or "mere departments" of Accor SA. Both of these arguments, however, fail to establish a sufficient basis for exerting personal jurisdiction over Accor SA.

223677.1

### a. *Accor SA is not "Doing Business" in the District of Columbia.*

Accor SA is not "doing business" in the District of Columbia for the purpose of asserting general jurisdiction. Accor SA never sought to avail itself of the privileges and benefits of doing business in this forum. (Ex. H ¶ 7; Ex. I ¶ 3.) It has never been licensed to do business in the District of Columbia. (Ex. H ¶ 7; Ex. I ¶ 3.) It has never been authorized to do business in the District of Columbia. (Ex. H ¶ 7; Ex. I ¶ 3.) Accor SA never sought qualification to do business in the District of Columbia, nor consented to be sued in this jurisdiction. (Ex. H ¶ 7; Ex. I ¶ 3.)

Nor is Accor SA a resident of the District of Columbia. (Ex. H at ¶ 7; Ex. I at ¶ 3.) It is not incorporated in the District of Columbia. (Ex. H ¶ 7; Ex. I ¶ 3.) It does not maintain any offices, warehouses, or places of business of any kind in the District of Columbia. (Ex. H ¶ 7; Ex. I ¶ 3.) Accor SA does not have any directors, officers, agents, or employees in the District of Columbia for the purpose of conducting the company's business.(Ex. H ¶ 7; Ex. I ¶ 3.) It does not have any directors, officers, agents, or employees who reside in the District of Columbia.(Ex. H ¶ 7; Ex. I ¶ 3.)

Accor SA never held a board of directors meeting in the District of Columbia. (Ex. H ¶ 7; Ex. I ¶ 3.) Accor SA never had a designated agent for service of process in the District of Columbia. (Ex. H ¶ 7; Ex. I ¶ 3.) Accor SA has never been required to maintain a designated agent for service of process in the District of Columbia. (Ex. H ¶ 7; Ex. I ¶ 3.) Accor SA does not own any assets in the District of Columbia. (Ex. H ¶ 7; Ex. I ¶ 3.) Accor SA never owned, leased, or controlled any real property in the District of Columbia. (Ex. H ¶ 7; Ex. I ¶ 3.) Accor SA never paid and has never been required to pay any taxes in the District of Columbia. (Ex. H ¶ 7; Ex. I ¶ 3.)

19

223677.1

b. *Accor Defendants Are Not Alter Egos of Each Other.*

There is no basis to support the claim that Accor NA is an "alter ego" or "mere department" of Accor SA. Accor NA is not a wholly-owned subsidiary of Accor SA. (Ex. H ¶¶ 5-6; Ex. I ¶¶ 4-5.)  IBL Limited, Inc. owns Accor NA. (Ex. H ¶¶ 5-6; Ex. I ¶¶ 4-5.) IBL Limited, Inc. is a wholly-owned subsidiary of Accor Lodging North America, Inc. (Ex. H ¶¶ 5-6; Ex. I ¶¶ 4-5.) Accor SA owns 62.14% of Accor Lodging North America, Inc.  IBL SA owns 37.86% of Accor Lodging North America, Inc. (Ex. H ¶¶ 5-6; Ex. I ¶¶ 4-5.)

In any event, Accor NA is not a mere instrumentality of Accor SA. (Ex. H ¶ 6; Ex. I ¶ 5.) Accor SA exercises no control over the day-to-day operations of Accor NA. (Ex. H ¶ 6; Ex. I ¶ 5.) Accor NA and Accor SA maintain separate offices, addresses, and telephone numbers. (Ex. H ¶ 6; Ex. I ¶ 5.) Accor NA is not dependent on Accor SA for approval to make day-to-day business decisions. (Ex. H ¶ 6; Ex. I ¶ 5.) Accor NA is not financially dependent on Accor SA. (Ex. H ¶ 6; Ex. I ¶ 5.) Accor NA maintains its own financial records and pays its own expenses, taxes, and salaries. (Ex. H ¶ 6; Ex. I ¶ 5.) Accor NA handles the hiring, training, and termination of employees without input from Accor SA. (Ex. H ¶ 6; Ex. I ¶ 5.)

Finally, there is no entity known as "Sofitel Group, LLC" that is or ever was a subsidiary or affiliate of either Accor NA or Accor SA. (Ex. H ¶ 9; Ex. I ¶ 7.) In fact, according to the District of Columbia Department of Consumer and Regulatory Affairs, the certificate of authority for "Sofitel Group, LLC" was revoked on November 14, 2005 for failure to file timely reports. (Ex. J)  Accordingly, this entity cannot be considered an "alter ego" or "mere department" of Accor SA or Accor NA.

223677.1

2. **This Court Lacks Specific Jurisdiction Because Accor SA Does Not Maintain Sufficient Minimum Contacts With The District Of Columbia.**

Evaluation of specific jurisdiction over a non-resident in the District of Columbia requires a two-part inquiry. First, the court must examine whether jurisdiction is applicable under the District's long-arm statute. Second, the court must evaluate whether jurisdiction satisfies the constitutional requirements of due process. *GTE Media Services, Inc. v. Bellsouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000).

a. *Long-Arm Statute – D.C. Code § 13-423.*

The District's long-arm statute, D.C. Code § 13-423, enumerates several bases for exercising specific jurisdiction. The jurisdictional bases include the transaction of business in the District of Columbia. D.C. Code § 13-423 (a)(1). A non-resident may also be subject to specific jurisdiction if the defendant caused tortious injury in the District of Columbia by an act or omission occurring outside the District, if the defendant "regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." D.C. Code § 13-423 (a)(4).

However, D.C. Code § 13-423 (b) limits the exercise of specific jurisdiction to instances where the cause of action arises from the enumerated jurisdiction-conferring conduct. Specifically, D.C. Code § 13-423 (b) states: "[w]hen jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him." As a result, plaintiff would be required to show that the November 6, 2002 railcar fire in Nancy, France arose from the Accor defendants alleged connections and conduct in the District of Columbia to establish specific jurisdiction under D.C. Code § 13-423.

There is no assertion in the first amended complaint that Accor SA's alleged connections to the District of Columbia bore any relationship to the November 6, 2002 railcar fire. (Ex. A ¶¶

21

223677.1

5-10, 15-26.) Nor is there any allegation of a connection between the asserted activity in the District of Columbia and "Accor Academy." (Ex. A ¶¶ 5-10, 15-26.) Accordingly, D.C. Code § 13-423 does not provide a basis for specific jurisdiction over Accor SA in the District of Columbia. Nor is it surprising that plaintiff omitted any reference to D.C. Code § 13-423 in his jurisdictional statement. (Ex. A ¶¶ 11-14.)

   b. *Due Process – Minimum Contacts.*

   Due process protects an individual's liberty interest in not being subject to the jurisdiction of a forum with which he has no meaningful contacts. *International Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945). This requirement provides individuals with "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). As such, due process provides "a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

   Due process is satisfied for the purpose of exercising specific jurisdiction when the defendant has "purposefully directed" activities at residents of the forum. *Rudzewicz*, 471 U.S. at 472. However, the litigation must result from injuries arising out of or relating to defendant's activities directed at that forum to establish specific jurisdiction. *Id.* For example, specific jurisdiction existed over a product manufacturer that expected its products to be sold in the forum state when its products subsequently injured consumers in that jurisdiction. *Woodson*, 444 U.S. at 297-298. Likewise, specific jurisdiction existed over a publisher who distributed magazines in a distant forum and allegedly libeled a resident of that state. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984).

223677.1

The constitutional touchstone for establishing specific jurisdiction is whether defendant purposefully established minimum contacts in the forum state. *Washington*, 326 U.S. at 316. The critical analysis is whether "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Woodson*, 444 U.S. at 297. As such, the defendant must purposefully avail itself of the privilege of conducting activities in the forum state. *Rudzewicz*, 471 U.S. at 475. This requirement ensures that a defendant will not be haled into a court solely as a result of "random, fortuitous, or attenuated" contacts or of the "unilateral activity of another party or a third person." *Id*. at 475.

If the court determines that such minimum contacts exist, then the court must evaluate whether the assertion of personal jurisdiction offends "fair play and substantial justice." *Rudzewicz*, 471 U.S. at 476. Factors to be considered include the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the states in furthering fundamental substantive social policies. *Id*. at 477. As such, jurisdictional rules "may not be employed in such a way as to make litigation 'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage' in comparison to his opponent." *Id.* at 478 (quoting *The Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 18 (1972)).

Specific jurisdiction over Accor SA, therefore, does not exist in this case. There is no connection between Accor SA's alleged activities directed at the District of Columbia and the events of November 6, 2002 in Nancy, France. Moreover, the contacts plaintiff claims between Accor SA and the District of Columbia are simply inadequate. (Ex. H ¶ 7; Ex. I ¶ 3.) Accor SA is incorporated and headquartered in France. (Ex. H ¶ 4; Ex. I ¶ 2.) Accor SA does not have any offices in the District of Columbia. (Ex. H ¶ 7; Ex. I ¶ 3.) Accor SA does not have any officers,

23

agents or employees in the District of Columbia. (Ex. H ¶ 7; Ex. I ¶ 3.) In fact, Judge Cedarbaum

found most of the same jurisdictional allegations in the Southern District of New York action to

be particularly dubious. (Ex. F at 21-34.)

Finally, the Accor defendants respectfully submit that the assertion of personal

jurisdiction over Accor SA would offend notions of "fair play and substantial justice." Accor SA

is a French company that does not have any offices or employees in the District of Columbia.

(Ex. H ¶ 7; Ex. I ¶ 3.) Plaintiff is suing Accor SA over events that occurred in France. (Ex. H ¶ 8;

Ex. I ¶ 6.) Even if Accor SA has constitutionally sufficient contacts with this forum, a claim

defendant denies, the quality of those contacts compared with the strength of the connection of

this claim to France simply does not justify exercising personal jurisdiction over Accor SA in the

District of Columbia.

### 3. This Court Lacks Personal Jurisdiction Pursuant to D.C. Code § 13-422 Because Defendants Are Not Headquartered Or Incorporated In The District of Columbia.

Plaintiff also claimed personal jurisdiction under D.C. Code § 13-422, which states that

"[a] District of Columbia court may exercise personal jurisdiction over a person domiciled in,

organized under the laws of, or maintaining his or its principal place of business in, the District

of Columbia as to any claim for relief." However, this statute is not applicable to Accor SA or

Accor NA, as neither company is incorporated, headquartered, or domiciled in this venue. (Ex. F

¶ 21-34.)

### E. *Plaintiff Failed to Effectuate Proper Service Because Accor SA Is Only Amenable To Service Under the Hague Convention.*

Sup. Ct. Civ. P. 4 (f) governs service of process on individuals in a foreign country in an

action commenced in the Superior Court for the District of Columbia. This section is almost

identical to Fed. R. Civ. P. 4 (f). Both require that service on individuals not in the United States

24

223677.1

be served by internationally agreed means, such as the Hague Convention on the Service Abroad

of Judicial and Extra-Judicial Documents ("Hague Convention"). If there are no internationally

agreed means, these rules provide for service in such a manner that is "reasonably calculated to

give notice" to the defendant.

Sup. Ct. Civ. P. 4 (h) and Fed. R. Civ. P. 4 (h) provide nearly identical requirements for

the service of process on corporations. Both state that service on a corporation outside the

United States shall be made pursuant to internationally agreed means, such as the Hague

Convention, or by service in a manner that is "reasonably calculated to give notice." Service on a

corporation inside the United States may be accomplished in a manner prescribed by the District

of Columbia or the state in which service is made.

D.C. Code § 13-334 provides for service on foreign corporations. This statute states that

service on a foreign corporation "doing business" in the District of Columbia may be made on

the company's agent or person conducting its business. Otherwise, service may be made under

§ 13-334 by leaving the summons and complaint at the company's principal place of business or

at the place of business or residence of the company's agent in the District. If a foreign

corporation "transacts business" in the District without having a place of business or resident

agent, the service upon any officer, agent, or employee of the corporation in the District of

Columbia is sufficient.

D.C. Code § 29-101.108 also provides a means for service of process on a foreign

corporation. This section states:

> Whenever a foreign corporation authorized to transact business in
> the District fails to appoint or maintain a registered agent in the
> District, or whenever any registered agent cannot with reasonably
> diligence be found at the registered office of the corporation in the
> District, or whenever the certificate of authority of a foreign
> corporation shall be revoked, the Mayor shall be an agent of the

25

>    foreign corporation upon whom service against the corporation
>    may be served ...

>                          *    *    *

>    If any foreign corporation shall transact business in the District
>    without a certificate of authority, it shall, by transacting business,
>    be deemed to have thereby appointed the Mayor its agent and
>    representatives upon whom any process, notice, or demand may be
>    served.

D.C. Code § 29-101.108 (b - c).

Plaintiff attempted service of process on Accor SA by delivering the summons and complaint to the Mayor's office pursuant to D.C. Code § 29-101.108. (Ex. "A," at p. 4.) Upon information and belief, plaintiff also purported to serve Accor SA by delivering the complaint to Accor NA. (Ex. A at 4.) Plaintiff did not attempt to serve Accor SA, to the best of defendant's knowledge, pursuant to the Hague Convention, to which France is a signatory state, as specified in Sup. Ct. Civ. R. 4 (f) and (h).

Plaintiff did not complete effective service of process on Accor SA. As stated in the accompanying declarations of Alan Rabinowitz and Pierre Todorov, Accor SA is headquartered and incorporated in France. (Ex. H ¶ 4; Ex. I ¶ 2.) It is not and never has been "authorized to transact business" in the District of Columbia. (Ex. H ¶ 7; Ex. I ¶ 3.) Moreover, as stated above, Accor SA is not "doing business" in the District of Columbia for the purposes of service of process or general jurisdiction. Accor SA does not have a registered agent for service of process in the United States. (Ex. H ¶ 7; Ex. I ¶ 3.) Accor NA is not an authorized agent for Accor SA. (Ex. H ¶¶ 6, 7; Ex. I ¶ 3.) Sofitel Group, LLC is not and has never been a subsidiary or affiliate of Accor SA. (Ex. H ¶ 9 Ex. I ¶ 7.)

As such, plaintiff's purported service pursuant to D.C. Code §§ 13-334 and 29-101.108 was not effective on Accor SA. Nor does plaintiff's delivery of the summons and complaint to

26

Accor NA constitute binding service on Accor SA.  In short, Accor SA is only amenable to service of process pursuant to the Hague Convention.  As plaintiff failed, to the best of defendant's knowledge, to attempt service by the internationally agreed means, Accor SA respectfully submits that it has not been properly served.

### III

### CONCLUSION

Based on the foregoing, Accor SA and Accor North America, Inc. respectfully request this motion be granted and that plaintiff's first amended complaint be dismissed in its entirety and with prejudice.

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER, LLP

By: _____/S/_____.
Robert B. Wallace, Esquire (Bar No 108571)
The Colorado Building, Suite 500
1341 G. Street, N.W.
Washington, D.C. 20005
Tel.: (202) 626-7660
Fax: (202) 628-3606

Thomas A. Leghorn, Esquire (of counsel)
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
3 Gannett Drive
White Plains, New York 10604
Tel.: (914) 323-7000
Fax: (914) 323-7001

*Attorneys for Accor SA and Accor North America, Inc.*

223677.1