UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

ROLLIN AMORE, *et al.*

               Plaintiffs,

                             Civil No.: 1:06-cv-00198 (RMU)
v.

ACCOR SA, *et al.*

               Defendants.

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

### I     INTRODUCTION

A horrific train fire killed the Amore family on November 6, 2002, outside Nancy, France. Because French law does not recognize the concept of estates, the Plaintiff is prohibited from bringing the survival action alleged in this case (or any action) in France. Rollin Amore is a lifelong resident of the District of Columbia and the District of Columbia Superior Court granted his request to open estate proceedings in the District of Columbia because the decedents had an interest in D.C. real property.

Dismissal of this case will forever foreclose the estates' ability to seek any remedy from those responsible for their deaths because the statute of limitations in the United States has expired and the estates are barred from bringing any suit in France.

4900321

## II.    PROCEDURAL HISTORY

Plaintiff filed the original complaint in D.C. Superior Court on November 7, 2005, and subsequently filed a First Amended Complaint (FAC) on January 6, 2006. On February 6, 2006, Defendants Accor SA and Accor NA removed the case to this Court. Defendants' Notice of Removal argued that the Sofitel Group, LLC has never been affiliated with the other Defendants. (*See* Notice of Removal at ¶ 17.)

On March 23, 2006, the Plaintiff sought leave to amend the FAC to correctly identify D.C. Sofitel LLC as the entity that actually owns and/or operates the Sofitel Lafayette Square. The Defendants opposed that motion and filed a motion to dismiss, which Plaintiff opposed. On November 9, 2006, the Court issued an Order to Show Cause why the case against Defendants Accor SA and Accor NA should not be dismissed on the basis of *res judicata*. The parties fully briefed the issue and on April 30, 2007, the Court *sua sponte* dismissed the claims against Defendant Accor SA but simultaneously held that the Order as to Defendant Accor NA was discharged. Finally, the Court ordered all pending motions stricken, including Plaintiff's Motion for Leave to Amend the Complaint and Defendants' Motion to Dismiss, and requested a briefing schedule for remaining motions.

On July 10, 2007, Plaintiff timely filed a Motion to Amend the First Amended Complaint and the Defendant Accor NA filed a Motion to Dismiss and for Summary Judgment.

## III.    FACTUAL BACKGROUND

The Plaintiff, Rollin Amore, brings this lawsuit *Pendente Lite* as the Co-Administrator of the Estates of Susanne Amore and Salvatore Michael Amore.

4900321

Plaintiff's mother and brother, as well as Plaintiff's brother's wife and their two young children ages twelve and eight, died a horrific death in a train fire out outside Nancy, France at approximately 1:45 a.m. on November 6, 2002. (FAC, ¶¶ 1, 15).

The overnight train on which Plaintiff's family was traveling was staffed by attendants trained and supervised by Accor SA, which directly owns and operates the "Accor Academy." (FAC, ¶ 16)  Upon information and belief, the Accor-trained personnel negligently performed their duties regarding fire safety and passenger safety prior to the train's departure.  (FAC, ¶¶ 16, 18 - 20).  In addition, after being alerted to the fire the Accor-trained personnel failed to come to the aid of the Amore family and others trapped in their cachets and instead fled from the fire and allowed it to spread in severity.  (FAC, ¶ 21)  The Accor-trained personnel then failed to alert the first responders on the scene that they could access immediately the rail car engulfed in flames by going through the attached railcar, allowing the first responders to waste valuable time trying to break into the railcar from the exterior.  (Id.).  Plainly, Accor's negligence caused or contributed to the deaths of the Amore family.

## IV.    ARGUMENT

### A.  Plaintiff's Claim Against Defendant Accor NA is Not Barred by *Res Judicata*

This Court already has determined that Plaintiff's claim against Defendant Accor NA is not precluded by the previous litigation in the Southern District of New York.  After issuing the Order to Show Cause, the Court further explained what it expected from the parties' responses. The Court stated: "The memoranda shall discuss: (1) whether Accor NA's claims are barred on the basis of the litigation in the Southern District of NY . . . ." (Minute Order, Docket Entry #16, November 13, 2006.)  After reviewing the Parties' arguments on this precise issue, the Court determined that the show cause order against Accor NA was discharged and that Accor NA

4900321

remained in the case. (Minute Order, Docket Entry #20, April 30, 2007.) This determination is the law of the case and cannot be revisited, since "the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*." *LaShawn v. Barry*, 87 F.3d 1389 (D.C. Cir. 1996). *See also Mylan Laboratories, Inc. v. Leavitt*, 2007 WL 1875780 (D.D.C. June 29, 2007) ("The law-of-the-case doctrine . . . prevents a court from revisiting an issue it has already decided"). Nevertheless, nearly half of the Defendant's underlying motion is devoted to rehashing the very same arguments raised – and rejected – in the Defendants' response to the show cause order. Knowing that it does not have grounds to seek relief from the order under Fed. R. Civ. P. 60(b), Defendant Accor NA is seeking an impermissible "re-do" on the issue through its motion.

Even if the Court's holding that the Order to Show Cause with respect to Accor NA does *not* operate as the law of the case, the Plaintiff's claim against Accor NA is not precluded by *res judicata* because there never was a final judgment on the merits. *See e.g., Polsby v. Thompson*, 201 F.Supp. 2d 45, 48 (D.D.C. 2002) (listing "a final judgment on the merits" as one of the four requirements for *res judicata* to apply). In the interests of judicial economy, Plaintiff here incorporates by reference section A(1) of Plaintiff's Response to the Show Cause Order.

## B. Plaintiff States a Valid Claim against Accor NA and D.C. Sofitel LLC

### 1. Standard of Review

The Defendant converts its motion to dismiss to one for summary judgment without clearly identifying what it is seeking and without articulating the correct standard of review for either theory. As the Court knows, the United States Supreme Court recently modified the standard for dismissal under Fed. Rule Civ. P. 12(b)(6) in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). The apparent holding in *Twombly* is that in order to proceed past a motion

4

4900321

to dismiss and into discovery, complaints must be plausible on their face. *See, e.g., Twombly*, 127 S. Ct. at 1974, *Iqbal v. Hasty*, 2007 U.S. App. LEXIS 13911 at *35 (2d Cir. 2007) (the new standard is "a flexible 'plausibility standard,' which obligates a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible."); *Aktierelskabet A.F. 21. November 2001 v. Fame Jeans*, 2007 U.S. Dist. LEXIS 41270 (D.D.C. 2007) (dismissing fraudulent misrepresentation claim in trademark dispute), *Hicks v. Ass'n of Am. Med. Colleges*, 2007 U.S. Dist. LEXIS 39163 (D.D.C. 2007) (dismissing Fair Labor Standards Act, DC Minimum Wage Act, and retaliatory discharge claims because of failure to meet plausibility standards).

Unchanged though, is the time honored precept that the Court "must grant [the] plaintiff the benefit of all reasonable inferences from the facts alleged." *Gilvin v. Fire*, 259 F.3d 749, 756 (D.C. Cir. 2001) (internal citations omitted). Moreover, the plaintiff does not have to plead the elements of a *prima facie* case in the complaint. *See Idea Public Charter School v. Belton*, 2006 WL 667072, *4 (D.D.C. 2006) (*citing Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1113 (D.C.Cir.2000)).

There can be little doubt that the Plaintiff estates have plead a claim that meets the new plausibility standard in that absent Accor SA's negligence they would not have died. (FAC ¶¶ 22, 23).

2. <u>The Plaintiff Successfully States a Claim Against All Defendants because Accor NA and DC Sofitel, LLC Are Alter Egos or Mere Departments of Accor SA and Thus it is Appropriate to Pierce the Corporate Veil</u>

Although corporate formalities are generally upheld, a court may pierce the corporate veil and hold those controlling the corporation liable "when particular circumstances merit – e.g., when the incentive value of limited liability [for the corporation] is outweighed by the competing value of basic fairness to parties dealing with the corporation." *Labadie Coal Co. v. Black*, 672

5

F.2d 92 (D.C. Cir. 1982). Although this occurs most commonly to hold a parent company liable

for the actions of a subsidiary, it also is possible to "reverse" pierce "where justice so requires."

*Pacific Development Inc. v. United States*, 1979 WL 1283, *2 (D.D.C. 1979).

Courts have developed a two-prong test to determine whether or not to pierce the

corporate veil[1]: (1) is there such unity of interest and ownership that the separate personalities of

the corporation and the individual no longer exist?; and (2) if the acts are treated as those of the

corporation alone, will an inequitable result follow?" *Labadie Coal*, 672 F.2d at 96.

Importantly, "fraud is not a prerequisite in a suit to disregard a corporate fiction." *Id.* at 99.

Rather, it is sufficient that a case "'present an element of injustice or fundamental unfairness' to

justify the court's piercing the veil." *Id.* (*quoting DeWitt Truck Brokers, Inc. v. W. Ray*

*Flemming Fruit Co.*, 540 F.2d 681, 687 (4th Cir. 1976)); *see also Shapiro, Lfischitz & Shram,*

*P.C. v. Hazard*, 90 F.Supp. 2d 15, 26 (D.D.C. 2000) (referring to the presence of "some element

of injustice or fundamental fairness").

The key factor in the first prong is the degree to which corporate formalities have been

maintained or ignored, and to what extent the absent corporation controls the present

corporation. *See Labadie Coal*, 672 F.2d at 96. Various factors may be relevant to the

determination, including *inter alia*, not maintaining corporate formalities, sharing the same office

or business location, transfer back and forth of employees, and whether the subsidiary operates

exclusively in the interest of the parent. *See Johnson-Tanner v. First Cash Financial Services,*

*Inc.*, 239 F.Supp.2d 34, 38 (D.D.C. 2003). In the analogous context of determining whether one

---

[1] The same test applies to determine if one corporation is the "alter ego" of another, the difference often being that "piercing the corporate veil" occurs in the context of liability whereas "alter ego" occurs in the context of determining jurisdiction. *See e.g., Shapiro, Lfischitz & Shram, P.C. v. Hazard*, 90 F.Supp. 2d 15, 23 (D.D.C. 2000) (using the term "alter ego" in a jurisdictional analysis while citing to the test outlined in *Labadie Coal*).

4900321

corporation is the alter ego of another for the purposes of venue and jurisdiction under the

Clayton Act, one court listed the following factors:

> the performance by the subsidiary or affiliate of business activities
> in a district, for example, sales and servicings, that in a less
> elaborate corporate scheme the absent corporation would perform
> directly by its own branch offices or agents. Another is a
> partnership in world-wide business competition between the absent
> corporation and the corporation that is present in a district. A third
> factor is the capacity of the absent corporation to influence
> decisions of the subsidiary or affiliate that might have antitrust
> consequences. Controlling stock ownership and interlocking
> directorates are, of course, indices of such a capacity. Yet another
> factor is the part that the subsidiary or affiliated corporation plays
> in the over-all business activity of the absent corporation. A fifth
> factor is the existence of an integrated sales system involving
> manufacturing, trading and sales corporations. A related factor is
> the status of the subsidiary or affiliate as a marketing arm of the
> absent corporation. A seventh factor is the use by the subsidiary or
> affiliate of a trademark owned by the parent. The transfer of
> personnel back and forth between the absent corporation and its
> subsidiary or affiliate is another factor that a court may properly
> consider. So is the presentation of a common marketing image by
> the related corporations. This is especially true when those
> corporations hold themselves out to the public as a single entity
> that is conveniently departmentalized either nationally or
> worldwide.

*Chrysler Corp. v. General Motors Corp.*, 589 F.Supp. 1182, 1201 (D.C. Cir. 1984).

As elucidated in further detail below, practically all of the factors outlined above are

present in the relationship between Accor SA and Accor NA and DC Sofitel LLC. In addition,

not piercing the veil would work an unfairness to the Plaintiff because Plaintiff simply cannot

bring this cause of action – or any other, for that matter – in France. Plaintiff's allegations –

which must be taken as true for purposes of deciding this motion, *see Gilvin*, 259 F.3d at 756 –

therefore support piercing the corporate veil and holding Accor NA and DC Sofitel LLC, liable

for the conduct of Accor SA.

4900321

a.    <u>An Unmistakable Unity of Interest Exists between Accor SA and Accor NA</u>

Although Accor SA is not currently a defendant in this case, the Plaintiff alleges facts sufficient to demonstrate that Accor SA sufficiently ignores corporate formalities such that piercing the corporate veil is warranted. (*See* Compl. ¶¶ 5-9). Accor NA conducts business in the United States and in the District of Columbia that Accor SA would have to perform if not for Accor NA's presence. Accor NA and Accor SA work together in the "world-wide business" of hospitality and services. (*See* Declaration of Christopher W. Hellmich, at ¶¶ 3, 4, 6, 10, and 17 (July 24, 2007), attached as Exhibit A). Accor SA is able to influence the decisions made by Accor NA, including dictating a North American-operations wide reorganization and appointing Accor NA's Chief Executive Officer. (*See* <u>Id.</u> at ¶¶ 7-9). Accor NA also plays a substantial role in the business activity of Accor SA. North American sales accounted for 22 percent (or € 1.57 billion) of Accor SA's revenue in 2002 (*See* <u>Id.</u> at ¶¶ 10). Accor SA also manages an integrated sales system from which a person can make a reservation at any Accor hotel worldwide simply by going to Accor's website. (*See* <u>Id.</u> at ¶¶ 20 – 22). Accor's website also advertises franchise opportunities and touts its worldwide services and integration. (*See* <u>Id.</u> at ¶ 18). In 2002 Accor SA began a Group-wide environmental policy applicable to all Accor hotels worldwide. (*See* <u>Id.</u> at ¶ 23). Accor NA also markets and uses the Sofitel brand name, Accor's marquee hotel chain. (*See* <u>Id.</u> at ¶ 18) Importantly, Accor SA's annual report states that it had "157,000 employees in 140 countries." (*See* <u>Id.</u> at ¶ 3). Indeed, the Accor NA's homepage and press releases dating back to 1999, refer to Accor North America as a "**division of Accor**" and tout Accor's international operations and statistics as opposed to those specific to Accor NA. (*See* <u>Id.</u> at ¶ 6) (emphasis added).

Taking Plaintiff's facts as true, the Plaintiff clearly demonstrates a unity of interest between Accor SA and Accor NA. The Plaintiff thus has put forward a set of facts on which he

4900321

is entitled to relief. This is especially true since the Plaintiff does not even have to make a *prima facie* case to survive the motion to dismiss. *See Idea Public Charter School*, 2006 WL 667072, *4 (internal citations omitted).

As the alter ego, agent, or mere department of Accor SA, Accor NA may be held liable for Accor SA's negligent conduct. *See Pacific Development Inc. v. United States*, 1979 WL 1283, at *2. Consequently, it is irrelevant whether the Plaintiff alleges that Accor NA. played a role in the train fire that killed the decedents or the ineffective training that the railcar attendants received. (Def. Mot. at 14-15). It is similarly irrelevant that attorneys for the estates' representatives in the New York action "admitted" that Accor NA did not do anything wrong. Rather, the negligence and liability of Accor SA is sufficient to state a claim against Accor NA as the alter ego, agent, or mere department of Accor SA

b.  <u>DC Sofitel LLC Has a Clear Unity of Interest with Accor SA</u>

Pending before the Court is Plaintiff's motion to amend the First Amended Complaint to correctly identify DC Sofitel LLC as the entity doing business in the District that is also an alter ego, agent or mere department of Accor SA.

Among other factors demonstrating control, Accor SA exercises active control over the finances, personnel decisions, operations, and marketing decisions of DC Sofitel, LLC and the other hotel properties Accor SA ultimately owns in the District. (*See* Compl. ¶ 5(c)). Accor SA also centrally controls labor relations and finances, and common management exists between the entities. (Id. ¶ 5(d)). Defendant Accor SA has held itself out to be the sole and/or ultimate owner of the Sofitel Lafayette Square hotel, which is owned by DC Sofitel, LLC. (Id. ¶ 7). According to Accor's Annual Report, Accor SA owns the Sofitel brand as well as business rights corresponding to its hotel properties as well as management and franchise rights. (Id. ¶ 9(c)). Accor SA "provides" its subsidiaries with "information systems, purchasing, cash management

9

and guarantee, advertising, marketing and advisory services, as well as the lending of staff." (Id. ¶ 9(d)). Accor SA also enters into contracts for the benefit of its District hotels and motels. (Id. ¶ 9(m)). Moreover, Accor SA directed and/or approved the sale of its interest in the Sofitel Lafayette Square hotel. (Id. ¶ 9(e)). The Plaintiff details further examples of Accor SA's control over the DC Sofitel, LLC, *see generally* Compl. ¶ 9, that, taken together, more than satisfy the level of control necessary to demonstrate alter ego. This is especially true given that the test does *not* require day-to-day control. *See Johnson-Tanner*, 239 F.Supp.2d at 38. Similar to the case against Accor NA, the negligence and liability of Accor SA would be sufficient to state a claim against DC Sofitel LLC as the alter ego, agent, or mere department of Accor SA once they are added as a defendant.

## C. Summary Judgment Cannot Be Granted Because Material Facts Are Disputed.

While it is difficult to ascertain where the Defendant argues that it is entitled to summary judgment, it appears the Defendant is making this argument when discussing the relationship between Accor NA and Accor SA. To succeed on summary judgment, the Defendant has the burden to "demonstrate[] that here is no genuine issue of material fact and that [it] is entitled to judgment as a matter of law." *Richard v. Bell Atlantic Corp.*, 976 F.Supp. 40, 42 (D.D.C. 1997) (citing Fed. R. Civ. P. 56(c)). The Court "must view the facts in the light most favorable to the [Plaintiff] and allow [him] the benefit of all reasonable inferences to be derived from the evidence." *Id.* As is evident from the discussion – both above and below – the Defendant has failed to meet its burden.

4900321

1.    The Defendant's Evidence is Irrelevent.

The Defendant has cited to affidavits provided at the end of 2003 and in 2006 for the

proposition that Accor NA is independent of Accor SA.  These affidavits discuss the relationship

between Accor NA and Accor SA at the time they were sworn, but do not address the

relationship between the Accor entities at the time of the incident in 2002.  However, the

relationship between the parent and subsidiary corporation "*at the time of the transaction*

*complained of*" determines whether or not a court should consider piercing the corporate veil.

*McConkey v. Medical Corp.,* 144 F.Supp.2d 958, 962 (E.D.Tenn. 2000) (emphasis in the

original).  *Accord American Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2nd Cir. 1988).  In the

analogous circumstances of determining if there is personal jurisdiction based on alter ego, this

Court "determines whether a defendant transacted business in the forum at the time the cause of

action arose." *United States v. Smithfield Foods*, 332 F.Supp.2d 55,61 (D.D.C. 2004).  Common

legal principles dictate that the relationship between Accor NA and Accor SA in 2006 is

irrelevant to the relationship between the companies in November, 2002.  The Defendant has

thus not even proffered the evidence necessary to meet its burden.

2.    Even if They Are Relevent, Defendant's Affidavits Do Not Meet Its Burden.

The Defendant attempts to establish the independence of Accor NA through three self-

serving affidavits.  These affidavits are misleading at best and specious at worst.  Defendant

brazenly states that Accor NA is "not a wholly-owned subsidiary of Accor SA." (Def. Mot. at

12).  It goes on to state that IBL SA and Accor SA together own 100% of the holding company

that owns Accor NA. (Id. at 12-13).  Yet, what the Defendant so carefully fails to mention is that

Accor SA owns 100% of IBL SA. (Ex. A at ¶ 4).  Thus, despite Defendant's assertion that

4900321

Accor NA is "not a wholly-owned subsidiary of Accor SA," through a series of holding companies Accor SA in fact owns 100% of Accor NA.

This glaring omission in the affidavits speaks volumes about the quality of the Defendant's evidence. It also establishes why summary judgment is inappropriate at this juncture. Plaintiff has had limited opportunity to establish the relationship between Accor NA and Accor SA. This Court has routinely allowed discovery in cases very similar to this one. *See, e.g., Shapiro*, 90 F.Supp.2d 15 and *Richard*, 976 F.Supp. at 43 (D.D.C. 1997). As in those cases, Plaintiff should be given the opportunity to discover the true relationship between Accor NA and Accor SA before this Court decides this case on summary judgment. Moreover, even with the limited opportunity afforded, the Plaintiff has offered ample evidence refuting Accor NA's assertions on the issue and, at the least, has created a genuine issue of material fact on the question of piercing the corporate veil.

Indeed, the issue of whether a court should pierce the veil is a very "fact-specific" examination. *United States v. Bill Habbert International Const.*, 2007 WL 861094, *1 (D.D.C. March 20, 2007). Thus this question should be a matter for the ultimate fact-finder – the jury. *Id. See also, Dorocon, inc. v. Burke*, 2005 WL 3454338 (D.D.C. 2005) (allowing jury to determine liability on veil piercing theory).

## V. CONCLUSION

Plaintiff clearly has presented a plausible claim entitling him to relief, and thus dismissal of the complaint is inappropriate. Plaintiff also has demonstrated multiple material facts in dispute, precluding the court from granting summary judgment. Finally, dismissal of this case would work a manifest injustice in that these estates cannot – as a matter of law – bring **any** claim in France or anywhere else and thus would be denied their day in court.

4900321

Respectfully submitted,

PATTON BOGGS, LLP


By:      _____/S/_____
         Christopher W. Hellmich, Esquire (Bar No 468840)
         Read McCaffrey, Esquire (Bar No 413837)
         2550 M Street, NW
         Washington, DC  20037
         Tel.: (202) 457-6504
         Fax: (202) 457-6315


Dated: July 24, 2007

4900321

## **CERTIFICATE OF SERVICE**

I hereby certify on this __24th__ day of July, 2007, Plaintiff's OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT was filed and served electronically on:

> Robert B. Wallace, Esq.
> Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
> The Colorado Building
> Suite 500
> 1341 G. Street, N.W.
> Washington, DC  20005

_____/S/_____
Christopher W. Hellmich, Esq.

4900321