UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

ROLLIN AMORE as co-administrator
of the Estates of Susanne Amore and Salvatore
Michael Amore, deceased,

               Plaintiffs

                                                       Civil No.: 1:06CV00198 (RMU)

      v.

ACCOR SA, ACCOR NORTH AMERICA, INC.,
SOFITEL GROUP, LLC, and DOES 1-5,

               Defendants.

## REPLY MEMORANDUM OF POINTS & AUTHORITIES

    Defendant Accor North America, Inc. (Accor NA), submits this reply memorandum of points and authorities in further support of its motion to dismiss and for summary judgment:

### I.   *Preliminary Statement.*

    Plaintiff's opposition asserts that this court's order dismissing Accor SA precludes this motion as a matter of law of the case, despite the fact that the court's decision did not resolve the issues presented in Accor NA's initial motion to dismiss. Plaintiff's reliance on his submission in response to the court's order to show cause in his opposition to this motion also fails to respond to several of defendant's *res judicata* arguments. Plaintiff also conceded that he was unable to state an independent cause of action against Accor NA, arguing that the alter ego rule made the existence of any negligence on Accor NA's part "irrelevant."

    Plaintiff's inability to state an independent claim against Accor NA is far from insignificant because his reliance on the alter ego doctrine is misplaced. He attempts to "reverse"

the alter ego doctrine by holding an admittedly innocent subsidiary vicariously liable for the alleged negligence of a parent corporation. The evidence plaintiff offers in opposition to Accor NA's motion, however, is legally insufficient to justify piercing the corporate veil. Plaintiff's opposition also fails to appreciate the consequences of applying the alter ego doctrine. Specifically, if Accor NA is Accor SA's alter ego, then Accor NA is entitled to invoke the same defenses that justified Accor SA's dismissal – *forum non conveniens* and collateral estoppel.

## II.     Argument.

### A. Plaintiff misconstrues the court's dismissal of Accor SA as precluding Accor NA's motion as law of the case.

Plaintiff mistakenly argues that this court's decision dismissing Accor SA, but not Accor NA, constitutes law of the case and precludes this motion. This court's decision struck Accor NA's motion to dismiss, but neither expressly nor implicitly resolved the issues presented. An actual ruling on the issue, however, is a prerequisite to the application of the law of the case doctrine. *Prince Constr. Co. v. District of Columbia Contract Appeals Bd.*, 892 A.2d 380, 386 (2006) ("[a] legal ruling on the issue, [is] a usual prerequisite for application of law of the case doctrine."); *Pannell v. District of Columbia*, 829 A.2d 474, 478 (2003) (law of the case requires a "ruling" that is "sufficiently final."). Accordingly, this court's decision dismissing Accor SA does not preclude Accor NA's motion as law of the case.

### B. Plaintiff's opposition did not address defendant's *res judicata* arguments.

Plaintiff's opposition to Accor NA's *res judicata* arguments relies exclusively on his response to the court's order to show cause. (Pl. Br. at 4.) That submission, however, did not address the arguments Accor NA raised in its own submission or in this motion. (Pl. OSC Br. Ex. A.) Plaintiff did not respond to Accor NA's argument that its motion to dismiss in the Southern District of New York converted into a motion for summary judgment, thereby terminating

2

plaintiff's right to file a notice of dismissal pursuant to Fed. R. Civ. P. 41. (Ex. A.) Nor did plaintiff address defendant's argument that the purported dismissal was invalid. (Ex. A.) Finally, plaintiff did not respond to Accor NA's argument that he failed to seek relief from Judge Cedarbaum's order pursuant to Fed. R. Civ. P. 60. (Ex. A.)

Plaintiff's opposition to this motion also fails to offer any argument in response to these issues. (Pl. Br. at 4. ) Accordingly, Judge Cedarbaum's order dismissing Accor NA constitutes a final judgment on the merits for *res judicata* purposes. The effect of this judgment is to preclude plaintiff from re-litigating his case against Accor NA in the District of Columbia. Notably, the application of *res judicata* in this case is not affected by plaintiff's alter ego arguments. As such, regardless of the outcome of the parties' arguments as to whether Accor NA is Accor SA's alter ego, the *res judicata* doctrine independently justifies Accor NA's dismissal.

### C. **Plaintiff concedes that there is no independent cause of action against Accor NA.**

Accor NA also moved to dismiss plaintiff's complaint on the grounds that he failed to allege any negligence against Accor NA. (Def. Br. at 11-12.) Plaintiff's opposition argues that it is "irrelevant" whether any cause of action exists against Accor NA. (Pl. Br. at 9.) Plaintiff, therefore, concedes that no independent allegations of negligence were or could be made against Accor NA. (Pl. Br. at 9.) As stated further in this memorandum, plaintiff's inability to attribute any acts of negligence to Accor NA is far from insignificant.

### D. **Plaintiff's reliance on the alter ego doctrine is misplaced.**

A corporation is generally regarded as an entity separate and distinct from its shareholders and subsidiaries. *Vuitch v. Furr*, 482 A.2d 811, 815 (1984). Although a "fiction," the separate corporate entity is entitled to the "greatest judicial deference." *Labadie Coal Co. v. Black*, 672 F.2d 92, 96 (D.C. Cir. 1982). To pierce the corporate veil, the parent corporation must

"so dominat[e] the [subsidiary] as to negate its separate personality." *AGS Int'l Servs. S.A. v. Newmont USA, Ltd.*, 346 F. Supp. 2d 64, 74 (D.D.C. 2004). Even a wholly owned subsidiary "is presumed to be a separate entity in the absence of 'clear evidence' that it is controlled by the parent." *Newmont*, 346 F. Supp. 2d at 78.

The issue of whether one corporation is an alter ego of another is a question of law to be decided by the court. *Material Supply Int'l, Inc. v. Sunmatch Indus. Co., Ltd.*, 62 F. Supp. 2d 13, 19-20 (D.D.C. 1999). Application of the alter ego doctrine involves an evaluation of (1) whether there is such unity of interest and ownership that the separate personalities of the subsidiary and parent corporations no longer exist; and (2) whether an inequitable result will follow if the court treats the subsidiary's allegedly wrongful acts as those of the subsidiary alone. *Newmont*, 346 F. Supp. 2d at 75; *Material Supply*, 62 F. Supp. 2d at 20.

Several factors impact the analysis of whether a sufficient unity of interest exists to pierce the corporate veil. These include: (1) the nature of the corporate ownership and control; (2) the failure to maintain corporate minutes or adequate corporate records; (3) the failure to maintain corporate formalities; (4) the commingling of funds and other assets; (5) the diversion of the corporation's funds or assets to non-corporate uses; and (5) the use of the same office or business location. *Labadie Coal Co.*, 672 F.2d at 96-9.

   1. *Plaintiff's alter ego arguments inappropriately seek to hold an admittedly innocent subsidiary vicariously liable for the alleged negligence of a parent corporation.*

A parent corporation's domination of a subsidiary so as to negate their separate corporate personalities justifies piercing the corporate veil, *Newmont*, 346 F. Supp. 2d at 74, because the parent's control over the subsidiary renders it equitably culpable for the subsidiary's torts. Plaintiff's approach to the alter ego rule, however, turns this justification on its head. Plaintiff does not seek to hold a parent liable for the acts of an allegedly dominated subsidiary. In fact, he

4

70067.1

concedes that there is no independent cause of action against Accor NA. (Pl. Br. at 9.) Instead, plaintiff seeks to hold an innocent subsidiary vicariously liable for the alleged negligence of a parent corporation, over whom the subsidiary exercised no control. (Pl. Br. at 6.)

The unreported decision that plaintiff cites in support of this "reverse" alter ego theory, *Pacific Dev., Inc. v. United States*, 1979 U.S. Dist. LEXIS 15298 (D.D.C. 1979), concerns a shareholder accused of improperly using the corporate form to commit tax evasion. There are no analogous allegations in this case, and *Pacific Dev.* does not justify sanctioning the plaintiff's approach to the alter ego rule, particularly when the plaintiff concedes that he is unable to allege that Accor NA committed any independent wrong. Accordingly, Accor NA submits that plaintiff's arguments contradict the letter and purpose of the alter ego doctrine.

    2.   *<u>Plaintiff's opposition fails to show that Accor NA was an alter ego of Accor SA.</u>*

Plaintiff incorrectly asserts that Accor SA and Accor NA's common business operations demonstrates sufficient control and dominion to disregard their separate corporate personalities. He is also mistaken in arguing that the benefit Accor SA derives from Accor NA evinces an alter ego relationship. Nor do plaintiff's arguments that the companies share common officers and marketing plans justify piercing the corporate veil. Plaintiff's arguments regarding the ultimate ownership of Accor NA are also immaterial. Finally, plaintiff's approach to the alter ego doctrine violates the rule's equitable considerations.

    i.   <u>Common business and operations.</u>

Parent and subsidiary corporations may conduct common business operations without sacrificing their separate corporate status as long as the parent does not so dominate the subsidiary as to render the corporate distinction meaningless. *See Newmont USA, Ltd.*, 346 F. Supp. 2d at 74; *Diamond Chem. Co. v. Atofina Chem., Inc.*, 268 F. Supp. 2d 1, 18 (D.D.C. 2003)

5

70067.1

("A parent corporation does not lose the benefits of limited liability by taking an active interest in the affairs of its subsidiary, by using its voting power to elect directors, or by entering into contracts with the subsidiary, so long as the corporate formalities are observed.").

Far from demonstrating corporate domination, plaintiff asserts that Accor SA is "able to influence" Accor NA's decisions and that Accor SA and Accor NA "work together" in a world-wide business. (Pl. Br. at 8.) Similarly, Accor's 2002 Annual Report concerns all subsidiaries in the Accor group and their common interest in financial performance and risk management. (Hellmich Decl. Ex. 2.) Contrary to plaintiff's arguments, the Annual Report does not evince Accor SA's alleged disregard for corporate formalities so as to strip the subsidiaries of their separate corporate personalities. (Hellmich Decl. ¶¶ 4-5, 10-14, 16; Pl. Br. at 8.)

  ii. <u>Parent corporation's benefit derived from subsidiary's activities.</u>

Plaintiff argues that Accor NA is an alter ego of Accor SA because it derives a benefit from Accor NA's business. (Pl. Br. at 8.) Plaintiff claims that Accor NA conducts business in the United States that "Accor SA would have to perform if not for Accor NA's presence." (Pl. Br. at 8.) Plaintiff also cites to North American sales revenue in 2002 as evidence of the benefit Accor SA derives from Accor NA. (Pl. Br. at 8; Hellmich Decl. ¶ 10.) A parent corporation's ultimate benefit from a subsidiary's activities is "not relevant,' however, in evaluating whether the subsidiary is an alter ego. *Material Supply*, 62 F. Supp. 2d at 20-1.

  iii. <u>Common directors and officers.</u>

Plaintiff also argues that the appointment of a common officer of Accor NA and Accor SA demonstrates an alter ego relationship. He cited the appointment of Georges LeMener to be president and chief executive officer of Accor Economy Lodging after Accor SA's acquisition of Red Roof Inns. (Hellmich Decl. ¶ 7.) After another merger, plaintiff claims that Accor SA

70067.1

appointed Mr. LeMener to be president and chief executive officer of Accor NA. Simultaneously, plaintiff asserts that Mr. LeMener also served on Accor SA's Group Management Executive Committee. (Hellmich Decl. ¶ 9.)

The fact that a parent and subsidiary corporation share common officers and directors, however, does not justify piercing the corporate veil. *Diamond Chem. Co.*, 268 F. Supp. 2d 1, at 9, 18. This is so because "[a] parent corporation does not lose the benefits of limited liability by … using its voting power to elect directors …." *Id*. at 18. In fact, it is "entirely appropriate" for officers of a parent corporation to also serve as officers of a subsidiary, without sacrificing the companies' separate corporate personalities. *Id*. at 9. Accordingly, Mr. LeMener's positions in Accor NA and Accor SA do not support plaintiff's alter ego theory.

    iv.    <u>Common promotion, marketing, and use of trademarks.</u>

Plaintiff relies on a common marketing strategy to show that Accor NA is Accor SA's alter ego. (Pl. Br. at 8; Hellmich Decl. ¶¶ 16-18, 20-21.) Examples plaintiff cited in support of this argument include, among other things, an on-line reservation system, advertisements for franchises, a common marketing and sales team, and the promotion of the Sofitel brand name. (Pl. Br. at 8; Hellmich Decl. ¶¶ 16-18, 20-21.) Joint marketing and shared use of trademarks are insufficient, however, to pierce the corporate veil. *Diamond Chem*. Co., 268 F. Supp. 2d at 9.

    v.    <u>Wholly owned subsidiaries.</u>

Plaintiff also claims that Alan Rabinowitz's declarations concerning the corporate relationships between Accor SA and Accor NA are "irrelevant" because they concern corporate relationships at the time they were sworn in 2003 and 2006 and not at the time of the accident in 2002. (Pl. Br. at 11.) Yet, plaintiff's relies on a corporate diagram from shortly after November

2002 demonstrating that a similar corporate relationship existed between Accor SA and Accor NA at the time of the accident. (Hellmich Decl. Ex. 1; Def. Mot. Ex. M, N, and O.)

Plaintiff's reliance on the corporate diagram of Accor SA's ownership interests does not affect the outcome of the alter ego analysis. As indicated in Mr. Rabinowitz and Mr. Todorov's declarations and in Exhibit 1 to Mr. Hellmich's declaration, Accor SA is not the immediate owner of Accor NA, but owns interests in other companies, which, in turn, own Accor NA. (Hellmich Decl. Ex. 1; Def. Mot. Ex. M, N, and O.) Even so, corporate ownership alone is insufficient to establish the control necessary to pierce the corporate veil. *Material Supply*, 62 F. Supp. 2d at 20 (although relevant, the fact that a subsidiary is "owned solely" by a parent corporation "is not by itself sufficient to show the two are alter egos.")

    vi.    <u>Inequities resulting from finding Accor NA to be Accor SA's alter ego.</u>

Plaintiff argues that equitable interests favor piercing the corporate veil because "plaintiff simply cannot bring this action -- or any other, for that matter -- in France." (Pl. Br. at 7.) Plaintiff is estopped, however, from challenging the adequacy of a remedy in France because Judge Cedarbaum's decision, to which this court gave preclusive effect, specifically found that France was an adequate alternative forum. (Def. Mot. Ex. F at 34-7.) Nor is the availability of a claim in France the equitable interest contemplated by the alter ego doctrine. *Diamond Chem. Co.*, 268 F. Supp. 2d at 7 ("the decision to pierce will be influenced by considerations of who should bear the risk of loss and what degree of legitimacy exists for those claiming the limited liability protection of the corporation.").

In fact, permitting plaintiff's case to proceed against Accor NA on an alter ego theory would cause significant inequities. As previously discussed, plaintiff is not seeking to hold a parent corporation vicariously liable for the alleged negligence of a subsidiary that the parent

8

company dominates and controls. Instead, he asks this court to hold an admittedly innocent subsidiary vicariously liable for the acts of a parent corporation. As such, if it is the domination over the subsidiary that justifies imposing vicarious liability, *Diamond Chem.* Co., 268 F. Supp. 2d at 7-9, then there is no basis for piercing the corporate veil and holding Accor NA liable for the alleged acts of Accor SA.

    vii.    <u>DC Sofitel LLC.</u>

Finally, plaintiff's opposition includes several arguments concerning DC Sofitel LLC as an alter ego of Accor SA. DC Sofitel LLC, however, is not presently a party to this case or a subject of this motion. Plaintiff is currently moving for leave to amend to add DC Sofitel LLC as a defendant, and Accor NA opposes that motion as futile. As DC Sofitel LLC is not currently a defendant, Accor NA submits that plaintiff's arguments concerning DC Sofitel LLC in opposition to this motion constitute an improper sur-reply in support of the concurrent motion to amend and are immaterial to this motion.

    3.    <u>Accor NA produced sufficient evidence to demonstrate that it is not an alter ego of Accor SA as a matter of law</u>.

As indicated the declarations of Mr. Rabinowitz and Mr. Todorov, Accor SA maintains a separate corporate personality from Accor NA. (Def. Mot. Ex. M, N, and O.) Both companies maintain separate financial records and pay their own taxes, salaries, and expenses. (Def. Mot. Ex. M, N, and O.) Accor NA is not financially dependent on Accor SA. (Def. Mot. Ex. M, N, and O.) Both companies maintain separate offices. (Def. Mot. Ex. M, N, and O.) Accor SA does not control Accor NA's daily operations. (Def. Mot. Ex. M, N, and O.) Nor does it interfere with Accor NA's hiring, training, and termination of employees. (Def. Mot. Ex. M, N, and O.) Plaintiff's opposition does not dispute these facts. (Pl. Br. at 8.)

Considering the alter ego considerations indicated in *Labadie Coal Co.*, 672 F.2d at 96-9, Accor NA should not be considered Accor SA's alter ego as a matter of law. Nor does plaintiff's opposition present any reason to conduct additional discovery on the alter ego issue. This is particularly so considering plaintiff's prior efforts to pierce the corporate veil in the Southern District of New York and Judge Cedarbaum's decision granting Accor NA's motion to dismiss.

> 4. *Even if Accor NA were Accor SA's alter ego, then the same defenses that justified Accor SA's dismissal also result in Accor NA's dismissal.*

Plaintiff's reliance on the argument that Accor NA is an alter ego of Accor SA also fails to consider the consequences of this rule. In this context, the alter ego rule means that Accor SA must dominate Accor NA so as to negate Accor NA's separate personality. *See Coosemans Specialties, Inc. v. Dep't of Agric.*, 482 F.3d 560, 568 (D.C. Cir. 2007). The alter ego doctrine, therefore, puts Accor SA and Accor NA in "identical" positions. *See Valley Finance, Inc. v. United States*, 629 F.2d 162, 171 n.17 (D.C. Cir. 1980).

If Accor NA and Accor SA are to be treated as "identical" companies, however, then Accor NA is entitled to invoke the same defenses that justified Accor SA's dismissal – collateral estoppel and *forum non conveniens*. If, however, Accor NA is not Accor SA's alter ego, then plaintiff's concession that he is unable to allege any independent cause of action against Accor NA for the events contributing to the train fire also results in Accor NA's dismissal. Either way, plaintiff's action against Accor NA fails as a matter of law.

## III. *Conclusion.*

Based on the foregoing, Accor North America, Inc. respectfully requests this court to grant its motion pursuant to Fed. R. Civ. P. 12(b)(6) and 54 dismissing the plaintiff's first amended complaint in its entirety and with prejudice.

        Respectfully submitted,

        WILSON, ELSER, MOSKOWITZ,
        EDELMAN & DICKER, LLP

By:    /S/ Robert B. Wallace
        _____
        Robert B. Wallace, Esquire (Bar No 108571)
        Jason R. Waters, Esquire (of counsel)
        1341 G. Street, N.W., Suite 500
        Washington, D.C. 20005
        Tel.: (202) 626-7660
        Fax: (202) 628-3606
        E-mail: Robert.Wallace@wilsonelser.com
        E-mail: Jason.Waters@wilsonelser.com


        Thomas A. Leghorn, Esquire (of counsel)
        3 Gannett Drive
        White Plains, New York 10604
        Tel.: (914) 323-7000
        Fax: (914) 323-7001
        *Attorneys for Accor North America, Inc.*

## CERTIFICATE OF SERVICE & ELECTRONIC FILING

I hereby certify on this 31st day of July, 2007, I served the foregoing electronically upon Christopher W. Hellmich, Esq. and Read K. McCaffrey, Esq., Patton Boggs, LLP, 2550 M. St., N.W., Washington, D.C. 20037, counsel for plaintiff, and that the original signed documents are in the possession of the attorneys responsible for this filing and are available for review upon request.

/S/ Robert B. Wallace
_____
Robert B. Wallace, Esq.

70067.1