**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

ROLLIN AMORE, *et al.*
Plaintiff,

Civil No.: 1:06-cv-00198 (RMU)

v.

ACCOR SA, *et al.*
Defendants.

**PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND THE FIRST AMENDED COMPLAINT**

Plaintiff's motion to amend the First Amended Complaint (FAC) is not futile because the Proposed Second Amended Complaint states a valid claim against DC Sofitel LLC ("DC Sofitel") and could survive a motion to dismiss. Nor would granting the motion unduly prejudice the Defendants as that term is understood and applied by the D.C. Circuit. This Court should grant Plaintiff's Motion for Leave to Amend, adopt the Proposed Second Amended Complaint, and allow this case to be decided on the merits rather than a mere technicality.

# I. ARGUMENT

## A. Plaintiff's Proposed Second Amended Complaint States a Valid Cause of Action Against DC Sofitel

### 1. The Proposed Second Amended Complaint Alleges Sufficient Facts to Demonstrate Plaintiff's Alter Ego Theory

A motion to amend the complaint is not futile if the proposed complaint can withstand a motion to dismiss. *See James Madison Ltd. v. Ludgwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996). In deciding a motion to dismiss, this Court must assume the facts alleged in the complaint to be true and also must grant the plaintiff all reasonable inferences. *See Gilvin v. Fire*, 259 F.3d 749, 756 (D.C. Cir. 2001). The complaint will survive a motion to dismiss when, after accepting the

allegations as true and drawing all inferences, the complaint is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007).

To state a valid claim on the basis of alter ego, the Plaintiff must demonstrate a unity of interest and ownership between Accor SA and DC Sofitel such that their separate personalities do not exist and treating Accor SA's acts separately will produce an inequitable result. *See Labadie Coal Co. v. Black*, 672 F.2d 92, 96 (D.C. Cir. 1982). The facts alleged in the Proposed Second Amended Complaint and the evidence discussed below demonstrate the requisite unity of interest and raise a plausible claim on their face. (*See* FAC, ¶¶ 5-9). Failure to treat Accor SA and DC Sofitel as alter egos would create an inequitable result because Accor SA has been dismissed from the case and the Plaintiff cannot bring this (or any other) claim in *any* other jurisdiction.

Contrary to Defendants's assertion, Plaintiff's evidence of the alter ego relationship between Accor SA and DC Sofitel extends well beyond the facts alleged in the FAC and a single press release. (*See* Def. Opp. Br. at 5). For example, the Defendants themselves produced documents demonstrating that in January 2003 DC Sofitel was a wholly owned subsidiary of Accor SA. (*See* Ex. A). Although the Defendants seek to establish the independence of DC Sofitel by listing the string of holding companies which own it, ending with a seemingly unrelated entity named IBS SA, the Defendants conspicuously fail to mention that IBS SA itself is 100 per cent owned by Accor SA. (*Compare* Def. Opp. Br. at 5 *with* Ex. A).

In addition, Accor SA sets the financial guidelines for the Accor Group, including the DC Sofitel, and "carefully target[s] our capital spending programs." (*See* Ex. B, Declaration of Christopher W. Hellmich (July 31, 2007), at ¶ 2). Accor SA also implemented cost cutting programs in 2002 which led to Accor SA negotiating global procurement contracts. (*See id.* at ¶

3). Accor SA also controls the marketing decisions for the Accor Group, and by inclusion DC Sofitel. Thus, "Accor SA implemented a Group wide policy in 2002 to increase the awareness of the Accor brand 'by closely linking the corporate and hotel chain brands and by including the Accor Hotels and Accor Service logos in all commercial media.'" (*Id*. at ¶ 5). In 2002 Accor SA also reorganized its sales and marketing teams throughout the group by increasing centralization; adding chain-wide hotel packages; and introducing cross-selling programs. (*See id*. at ¶ 6). Accor SA also has implemented technology services company wide, including a centralized booking and management system as well as a centralized reservation system. (*See id*. at ¶¶ 7-8). Accor SA also has a Group wide management system and intranet that allows hotels to control budgets and also interface with Accor databases. (*See id*. at ¶ 9). Accor SA also provides training programs to employees worldwide, some of whom travel to France to attend the programs. (*See id*. at ¶ 10). There also exists a worldwide environmental policy, which includes an Accor SA created "Hotel Environmental Charter" which was posted in more than 1,200 U.S. hotels in 2003. (*See id*. at ¶¶ 12-13).

Nor have the connections between Accor SA and DC Sofitel diminished since 2002. Accor SA's promotion of the Sofitel "brand" is particularly telling. Accor SA's website states that "Sofitel is the premium hotel brand of Accor." (*See* http://www.accor.com/gb/groupe/activites/hotellerie/marques/sofitel.asp, last visited July 27, 2007). The website also states that "[t]o establish a top-tier position in the highly competitive deluxe hotel industry, *Accor* works with leading specialists, from world-renowned architects and top interior designers, to award-winning chefs." (*Id.*) (emphasis added). Additionally, the website refers to the 195 Sofitel hotels as part of the Accor "network." (*See* http://www.accor.com/gb/groupe/activites/hotellerie/chiffres/chiffres_hotellerie.asp#, last visited

July 27, 2007). It also is possible to apply for jobs at Sofitel hotels worldwide, all from the Accor website. (*See* http://jobs.accor.com/ww/Search.asp?IdLng=2&IdWS=0, last visited July 27, 2007). It is also possible to make reservations at the Sofitel in Washington, DC directly from the Accor website. (*See* http://www.accorhotels.com/gb/reservation/liste_hotels.shtml, last visited July 27, 2007). Accor SA stated the relationship between the company and its brands best in its 2002 Annual Report: "Accor Hotels, which consolidates our hotel brands, offers customers a one-click portal into the Accor universe. It is expressed most effectively through our accorhotels.com website." (*See* Hellmich Declaration at ¶ 16 (July 24, 2007), submitted as Ex. A to Plaintiff's Opposition to Defendants' Motion to Dismiss; *see also id.* at ¶¶ 17 - 18).

Importantly, the alter ego analysis is based on the totality of the circumstances – not each and every factor must be present to find that DC Sofitel is the alter ego of Accor SA. *See Labadie*, 672 F.2d at 97 ("It is clearly not necessary that all of these factors be present in a given case to justify piercing the veil."). In addition, the facts described above represent only those that Plaintiff has been able to ascertain through its limited ability to research the relationships between DC Sofitel, Accor NA, and Accor SA. At this stage of this litigation, allowing Defendants' self-serving and disingenuous affidavit to establish the lack of a relationship between DC Sofitel and Accor SA would be prejudicial to Plaintiff. Plaintiff has established that DC Sofitel is 100% owned by Accor SA. This fact alone casts aspersions on Defendants' evidence and demonstrates that it is too early in this litigation to find that an alter ego or mere department relationship does not exist between the two entities. Plainly, Plaintiff has alleged sufficient facts based on Accor SA's own documents to warrant the denial of Defendants' motions and allow Plaintiff to commence discovery.

Moreover, as fully argued in Plaintiff's Opposition to Defendants' Motion to Dismiss, the Defendants have not provided any evidence of the relationship between DC Sofitel, Accor NA, and Accor SA in 2002. Instead, Defendants rely on affidavits from 2006 purporting to assess the relationship between the entities as of then, not when the fire occurred in 2002. Plaintiff, on the other hand, has offered evidence demonstrating this relationship at the time of the train fire. This evidence cannot be trumped by evidence of corporate interplay four years later. *See McConkey v. Medical Corp.*, 144 F.Supp.2d 958, 962 (E.D.Tenn. 2000). *Accord American Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2nd Cir. 1988). This is particularly true since the Plaintiff has proffered evidence that controverts the extent of the 2006 relationship as well.

Finally, because the Plaintiff has stated a valid claim based on alter ego, it does not matter whether DC Sofitel was responsible for the horrific fire. As the alter ego of Accor SA, DC Sofitel may be held liable for Accor SA's negligent conduct. *See Pacific Development Inc. v. United States*, 1979 WL 1283, *2, (D.D.C 1979) ("'Reverse' piercing the corporate veil . . . is clearly permissible where justice so requires.").

2. <u>The Procedural Grounds on Which Accor SA Was Dismissed Do Not Apply to Its Alter Ego, Accor SA</u>

Defendants next advance the novel – and unsupportable[1] – proposition that DC Sofitel can piggy back on the *forum non conveniens* dismissal of Accor SA. This argument does not withstand scrutiny, however. First, the alter ego doctrine typically is considered remedial rather than defensive in nature. *See e.g., Wu v. Tseng*, 2007 WL 201087, *8 (E.D.Va. 2007) (rejecting

---

[1] As one court has noted:

> we are impelled to remark the obvious: it would be strange if an equitable doctrine could be construed to allow a party, on one hand, to resist the characterization that he is a corporation's alter ego, and, on the second hand, to allow him simultaneously to use that characterization as a device to sidetrack the characterizer's suit.

*McCarthy v. Azure*, 22 F.3d 351, 363 (1st Cir. 1994).

the Defendants' motion to dismiss "[b]ecause the alter ego doctrine may not be used defensively by Defendant Tseng to avoid liability"); *see also* 1 Fletcher Cyc. Corp. § 41.10 (2006). Second, DC Sofitel was not a party to the prior litigation, and a *forum non conveniens* determination is not a decision on the merits. *See e.g.*, *In re Minister Papandreou*, 139 F.3d 247, 255 (D.C. Cir. 1998) (referring to *forum non conveniens* as a "non-merits ground[ ]" of dismissal). Indeed, rather than a bar to new litigation, a *forum non conveniens* dismissal is actually a mandate to the Plaintiff to re-file the lawsuit in a more convenient forum. There was nothing about the prior litigation that held the District to be an inconvenient forum for a case against DC Sofitel, a corporation located and doing business in the District. Thus that determination has no bearing on whether a suit against DC Sofitel in the District is appropriate.

The illogic of Defendants' theory can also be seen by applying it to the analogous situation of personal jurisdiction. In that situation, if the Defendants' theory were correct, a Plaintiff could not use a subsidiary's contacts with a forum to obtain alter ego personal jurisdiction over a parent company. After all, if the parent's contacts with the forum are insufficient to support jurisdiction then the alter ego subsidiary – using the same defense available to the parent – should not be subject to personal jurisdiction either. Yet a subsidiary's contacts with the forum in fact *can* be imputed to the parent corporation for purposes of personal jurisdiction if the subsidiary is merely the alter ego of the parent. *See e.g.*, *Johnson-Tanner v. First Cash Financial Services, Inc.*, 239 F.Supp.2d 34, 38 (D.D.C. 2003). *Forum non conveniens*, like personal jurisdiction, is about what forum is appropriate for litigation. And like personal jurisdiction, a *forum non conveniens* dismissal of a parent corporation does not mean that the alter ego subsidiary can hide behind the inconvenience to the parent.

**B. Granting the Motion to Amend Would Not Unduly Prejudice the Defendants**

The sole prejudice to which Defendants point is the "additional expense and frustration" that the Defendants might have to incur from defending a valid cause of action. (*See* Def. Opp. Br. at 7). Yet it is unclear how this suit prejudices the Defendants at all. Defendants greatly overstate the level that they "prevailed" in the SDNY litigation. That case was dismissed on the basis of *forum non conveniens* and a voluntary dismissal, respectively. The *forum non conveniens* dismissal, by its very nature, preordains that the defendant will face a new suit *in some other forum*. The Defendants should have been prepared for renewed litigation and the concomitant expenses and frustrations. Yet despite seeing the SDNY litigation end with those Plaintiffs being told to seek redress in another forum, Defendants are now arguing that they are surprised and prejudiced by the claim being filed somewhere else. For obvious reasons, there can be no surprise or prejudice that Plaintiff filed a new claim against Defendants in a more appropriate forum.

Assuming, *arguendo*, that the suit does somehow prejudice the Defendants, that prejudice does not rise to the level of "undue" prejudice required to deny a motion for leave to amend. *See Dove v. Washington Metropolitan Area Transit Authority*, 221 F.R.D. 246, 248, n.3 (D.D.C. 2004) ("Although any amendment designed to strengthen the other side's case will in some way harm the opponent, it does not necessarily follow that such amendment must be 'unduly' prejudicial."). Rather, "undue prejudice" has been defined as the "denial of the opportunity to present facts or evidence which [] would have [been] offered had the amendment[] been timely." *Id.* at 248. The Defendants have been well aware that Plaintiff intended to sue DC Sofitel from the outset – indeed, Plaintiff physically served the Complaint on the manager of the Sofitel Lafayette Square – and thus cannot argue they have been denied this opportunity.

Furthermore, the Defendants misapply the holding of the one District of Columbia case they cite, *Atchison v. District of Columbia*, 73 F.3d 418 (D.C. Cir. 1996). In that case, the Plaintiff waited more than two years to seek leave to amend, did so on the eve of trial, and "at no time . . . even so much as hinted of his intention to sue" the given party. *Id*. at 426-27. None of those facts are present here. To the contrary, Plaintiff's intent to sue the nominal owner of the Sofitel Lafayette square was clear from the beginning of the lawsuit; Plaintiff served the Sofitel Lafayette Square and merely misnamed the entity because the DC tax roles were inaccurate; Plaintiff then indicated his intent to amend the complaint immediately upon learning of the mistake. All of this occurred at the beginning stages of this litigation. Moreover, unlike *Atchison*, this case is in the earliest stages of litigation. *See Dove*, 221 F.R.D. at 249 (noting that the case "is in its early stages given that the parties have yet to appear for an initial scheduling conference or commence discovery.").

## II. <u>CONCLUSION</u>

The Proposed Second Amended Complaint states a valid claim against DC Sofitel and thus is not futile. An amendment would not be *unduly* prejudicial to the Defendants because they have been on notice from the beginning and the amendment would not change their strategy or choice of counsel. The purpose of Rule 15 is to have cases adjudicated on the merits rather than mere technicalities. *See Nwachukwu v. Karl*, 222 F.R.D. 208, 211 (D.D.C. 2004). Granting leave to amend here would uphold that goal by "facilitat[ing] a decision on the merits." *Dove*, 221 F.R.D. at 249. This Court should therefore grant Plaintiff's Motion for Leave to Amend and adopt Plaintiff's Proposed Second Amended Complaint.

Respectfully submitted,

PATTON BOGGS, LLP

By: ______/S/_______________

Christopher W. Hellmich, Esquire (Bar No 468840)
Read McCaffrey, Esquire (Bar No 413837)
2550 M Street, NW
Washington, DC 20037
Tel.: (202) 457-6504
Fax: (202) 457-6315

Dated: July 31, 2007

**CERTIFICATE OF SERVICE**

I hereby certify on this _31st_ day of July, 2007, Plaintiff's REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND THE FIRST AMENDED COMPLAINT was filed and served electronically on:

Robert B. Wallace, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
The Colorado Building
Suite 500
1341 G. Street, N.W.
Washington, DC 20005

___________/S/________________
Christopher W. Hellmich, Esq.